HAROLD M. MORSE AND MADISON B. GRAVES, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF MORSE & GRAVES, PETITIONERS, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, HONORABLE A. S. HENDERSON, PRESIDING JUDGE THEREOF, RESPONDENTS.

No. 3540

June 23, 1948.                    195 P.2d 199.

*George E. Marshall,* of Las Vegas, for Petitioners.

*Emilie N. Wanderer,* of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, J.:

The above-named petitioners filed in this court their petition for a writ of certiorari against the respondent court and the judge thereof, seeking relief from an order made by that court and alleged to be without or in excess of its jurisdiction ordering them to deliver to a substituted attorney sundry papers that had come into their possession as attorneys for the plaintiffs in certain pending litigation. We issued the writ and made it returnable June 1, 1948, on which date the respondents presented a general demurrer and motion to quash the writ and to dismiss the proceedings, and the matter was argued and submitted on that date upon the demurrer and motions. Both parties also submitted supporting affidavits. The facts are as follows:

On July 11, 1947, Fred Delkin, Hattie May Pavlo, and James Delkin entered into a written contract with Morse & Graves, attorneys at law, whereunder the latter were employed to prosecute certain claims against Alonzo C.

Delkin, Eugenia Delkin, his wife, and others for a contingent fee of 25% "of any money or property paid, received, collected or recovered, by action, compromise or otherwise, upon or in satisfaction or in settlement of said claims or any judgment or judgments obtained thereon." The attorneys agreed to commence the action not later than September 1, 1947, and diligently to prosecute the same. Paragraph IV of the contract reads as follows: "Clients reserve the right to discharge the attorneys from their employment at any time. In the event of such discharge, clients will compensate the attorneys for services rendered and expenses incurred to the date of discharge in a reasonable sum to be determined, if possible, by agreement between the parties hereto." Petitioners, the attorneys comprising the firm of attorneys as parties to said contract, filed such complaint December 1, 1947, on behalf of the said clients and against the said defendants, seeking general equitable relief for breach of a trust relationship which was alleged to have amounted to a partnership between the parties, for a dissolution and accounting, for restitution of specific properties and for exemplary damages and costs. The prayer of the complaint demanded restitution to the plaintiffs of properties amounting to in excess of $1,240,000 and for $100,000 exemplary damages. The complaint was verified by one of the plaintiffs. One of the defendants was immediately served, and on January 15, 1948, all of the defendants appeared by demurrer and motion to strike, which demurrer and motion are still pending. On April 12, 1948, the plaintiffs in such action filed in the respondent court their notice of motion to substitute Emilie N. Wanderer as their attorney in the place and stead of Morse & Graves, which motion was noticed for April 16, 1948. The motion was supported by the affidavit of Hattie May Delkin Pavlo, alleging in some detail breach of the contract of employment by the attorneys and alleging negligence and misconduct, and will be referred to in greater detail later.

The motion sought an order "releasing the litigation herein of any claim of attorneys lien which said attorneys may make and for an order directing that said attorneys turn over to the plaintiffs herein all files, papers, claims, and records now in their possession, in connection therewith and pertinent thereto." Morse & Graves moved to strike certain portions of the affidavit. The motions were heard in the respondent court on April 28, 1948, at which time the attorneys stated to the court that there was no objection to the substitution of attorneys. The court thereupon entered a minute order that Emilie N. Wanderer be substituted as attorney for plaintiffs in place of Morse & Graves "and such papers that pertain to this suit, but no private correspondence between the plaintiffs and attorneys Morse & Graves, shall be delivered to Emilie N. Wanderer within five days from date hereof." The movents did not ask in their notice of motion and the court did not order that the compensation of the attorneys for their services to the date of the substitution be determined or paid or otherwise secured and no evidence was adduced on such issue. The affidavits in the present proceeding show that the clients asked leave to submit evidence on such issue and to have the compensation determined, but that the respondents, on objection of the attorneys, refused to hear or determine such issue. The attorneys thereafter served notice of motion for a rehearing of the court's orders and although respondents maintain that such motion for rehearing is still pending and that the attorneys have thus not exhausted their remedies in the respondent court, we are satisfied from the record now before us that the respondent court in effect denied the motion for rehearing.

At the time of the hearing of the original motion the attorneys served the clients with copy of summons and complaint in an action commenced by the attorneys against the clients for services in the sum of $10,000. Such action is still pending. Following the minute order

of April 28, 1948, above referred to, the respondent judge signed and filed a written order of substitution and directing the displaced attorneys to deliver to the substituted attorney "all files, papers, correspondence and records now in their possession in connection herewith and pertinent hereto, within five days from the date hereof." It will be noted that the terms of the written order are broader than the terms of the minute order and do not except the correspondence between the clients and the attorneys.

It may be noted in passing that petitioners assert that for such reason the court was without jurisdiction to make the order, but assign no reason and submit no authorities in support of their contention that the greater breadth of the written order over the minute order constituted an excess of jurisdiction. This court has several times had occasion to consider discrepancies between a minute order and a formal written order made by the court (see Mortimer Building and Loan Commissioner v. Pacific States Savings and Loan Company, 62 Nev. 142, 153, 141 P.2d 552, 145 P.2d 733; Silva v. Second Judicial District Court, 57 Nev. 468, 66 P.2d 422), but while error was assigned it was not claimed that the written order was for that reason beyond the jurisdiction of the court. In any event the nature of the papers involved in the present controversy somewhat narrows the inquiry so far as this point is concerned. Counsel for the respondents, who was likewise the substituted attorney in the respondent court, states that the clients have no desire to be furnished with the private correspondence between them and the displaced attorneys. We may conclude from statements made in the oral arguments and the written memoranda filed by the parties that the papers in question comprise sundry memoranda, papers and data furnished by the clients to the attorney. These papers are considered essential by the substituted attorney for the prosecution of the main action.

As above noted the petitioners do not object to

the order substituting attorneys. They maintain, however, that the court was without jurisdiction to discharge and destroy their attorney's lien upon the papers in their possession. That the lien would be destroyed by delivery of the papers in compliance with the order cannot be questioned. (As the main controversy is between "the clients" and "the attorneys" and as the authorities we shall discuss refer to the parties in that manner, we shall in many cases refer to the plaintiffs in the main litigation as "the clients" and to the petitioners herein as "the attorneys.")

The very obvious confusion into which the parties fall as evidenced by the oral arguments and the written memoranda filed with the court (nothing in the nature of a formal brief was filed by either party) results from their failure to distinguish clearly between a general or retaining lien and a special or charging lien. As an example of this confusion both parties rely upon the case of Berrum v. Georgetta, 60 Nev. 1, 93 P.2d 525, 98 P.2d 479. The attorneys rely upon this case as laying down the procedure they followed in commencing their action to recover $10,000 attorney fees from the clients and to foreclose their attorney's lien in satisfaction of their claim. The respondents rely on the case to show "that an independent action lies for the enforcement of the aforesaid lien." But the "aforesaid lien" quoted by the respondents immediately preceding this assertion is the lien provided by sec. 8923 N.C.L., giving the attorney a lien upon his client's cause of action which attaches to the judgment, etc., and the proceeds thereof. This is a special or charging lien and was the kind of lien with which Mr. Justice DUCKER was dealing in Berrum v. Georgetta, supra. It is entirely separate, distinct and remote from a retaining lien. The lien affected by the lower court's order in the present case is distinctly a retaining lien. This attaches to all papers, books, documents, securities and money that come to the attorney in the course of his professional employment by the·

client without any special contract regarding it. The charging lien, such as considered in Berrum v. Georgetta, is a lien on the judgment obtained for the client for the attorney's services rendered in obtaining it. The former depends upon possession. The latter does not. The former applies to a general balance for all professional services performed whether in the action itself or in prior actions or for general legal services. The latter attaches to the judgment or proceeds for services performed in the particular action only. The former is "passive" and not enforceable by proceedings to foreclose, except as may be accomplished through some incidental proceeding. The latter may be actively enforced as in Berrum v. Georgetta. The clients contend here that as our statutory lien (N.C.L., sec. 8923) attaches to the "verdict, report, decision, or judgment * * * and the proceeds thereof," the attorneys "have no lien as there is no res to which a lien may attach." This, however, has reference to a charging lien, with which we are not here concerned.

In 5 Am.Jur. 388 the rule is generally stated as follows:

"The general or retaining lien of an attorney is the lien which attaches to papers, documents, moneys, etc., of his client, connected with the litigation, coming into the attorney's hands in the course of his employment, and gives the attorney the right to retain such papers, property, or money until all his costs and charges against his client are paid. This lien is said to have had its origin partly in custom and partly to prevent circuity of action. It is a common-law lien founded and depending upon possession; * * * In some states there is an express statutory provision for a general or retaining lien which supersedes the common-law one."

█ The last sentence is important with regard to the contention of respondents that the Nevada statute has aborgated the common-law lien. Our statute reads in part as follows:

"* * * From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim which attaches to a verdict, report, decision, or judgment in his client's favor and the proceeds thereof in whosesoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment. * * *" Section 8923, N.C.L.

It will be seen that it applies entirely to a charging lien and in no way affects the attorney's common-law retaining lien. Lehman, Chief Judge of the Court of Appeals of New York, has been the author of a number of informative opinions dealing with this situation. In Re Cooper, 291 N.Y. 255, 52 N.E.2d 421, the case had come up from the appellate division of the supreme court (265 App.Div. 969, 39 N.Y.S.2d 30) which had affirmed an order of a special term (32 N.Y.S.2d 158) and the matter was carefully considered, with six other judges concurring. The court said [291 N.Y. 255, 52 NE2d 424]:

"The petitioner has a retaining lien upon the passbook in the savings bank which had been delivered to her pursuant to her retainer. Her right is not challenged to hold property delivered to her until her lien is satisfied. A retaining lien is confined to the property in the possession of the attorney. It is entirely distinct from the lien of an attorney created by statute (Judiciary Law, Consol.Laws, c. 30, sec. 475), upon 'his client's cause of action' and which attaches to a 'judgment * * * in his client's favor, and the proceeds thereof in whatever hands they may come.' The statutory lien can be enforced by appropriate order of the court which may direct that the lien be satisfied out of moneys or property to which the lien attaches though not in the possession or control of the attorney. A retaining lien cannot be so enforced. Matter of Heinsheimer, 214 N.Y. 361, 108 N.E. 636, Ann.Cas.1916E, 384; Robinson v.

Rogers, 237 N.Y. 467, 143 N.E. 647, 33 A.L.R. 1291."

In 1 Jones on Liens, 3d Ed., 106, the rule is recited virtually as quoted from American Jurisprudence, supra, and it is said that an attorney's lien upon papers was recognized as early as 1734 and was an established rule in 1779. The charging lien described by Lord Mansfield as quoted by Mr. Justice DUCKER in Berrum v. Georgetta is quoted, as it is in almost all of the cases dealing with the subject. Statutory retaining liens are also dealt with at length, but as has been noted no retaining lien is provided by statute in this state. It is said at 7 C.J.S., Attorney and Client, sec. 210, p. 1141, with citation of numerous authorities, that the right to maintain an attorney's retaining lien under proper circumstances has never been denied. Such general or retaining lien attaching to papers, documents, etc., of his client connected with the litigation and coming into his hands in the course of his employment is maintained simply by retaining possession until his fees are paid. As noted, it is a passive lien and cannot ordinarily be actively enforced either at law or in equity. It is simply a right to retain the papers as against the client until the attorney is paid in full. 5 Am.Jur. 388, 392. It will be noted from the cases hereafter cited that the only advantage gained by the attorney through such lien is the possibility of forcing the client to settle because of the embarrassment, inconvenience or worry caused the client by the attorney's retention of the papers.

In Smyth v. Fidelity and Deposit Company of Maryland, 326 Pa. 391, 192 A. 640, 643, 111 A.L.R. 481, the court said:

"Attorney's liens existing at common law are divided into two distinct classes—the general or 'retaining' lien, i. e., the right of the attorney to refuse to surrender documents, papers, etc., belonging to his client, and the 'charging lien,' or the right to be paid out of a fund or judgment which he has been instrumental in recovering for his client. We are here concerned only with the

former. If appellant had an attorney's lien in the present case, it was a retaining lien which simply gave him a right to hold the stock until he was paid his fee by the client, and it did not include the power to sell.

" 'The retaining lien may be defined as the right of an attorney at law to retain possession of such documents, money, or other property of his client coming into his hands by virtue of the professional relationship, until he has been paid for his services, or until he voluntarily surrenders possession of the property, with or without payment.' 2 Thornton on Attorneys at Law, § 573, p. 970. Thornton also states, vol. 2, § 575, p. 972: 'The retaining lien is a mere right to retain the papers or other property on which it exists; and while it attaches to every species of property belonging to the client, and which has come to the attorney's possession in the course of his employment, it cannot be actively asserted or enforced.' "

In Bulk Oil Transports v. Robins Dry Dock & Repair Co., 2 Cir., 277 F. 25, 31, writ of certiorari denied 257 U.S. 657, 42 S.Ct. 184, 66 L.Ed. 421, even a right of inspection of papers held by an attorney as a lien for his fees was denied. The court, after calling attention to the fact that his lien gave him only a right to retain the papers till his charges were paid and that his right of retention was valuable only in proportion as the papers were valuable to his client, said:

"The leverage which the possession of the papers affords depends upon how embarrassing to the client the possession of them by the attorney is. If the client is given the right to inspect the papers or to compel their production while the lien continues, it certainly impairs the value of the lien, as it diminishes the embarrassment caused by the attorney's retention of them, and might make them valueless to the attorney, and the lien nugatory."

Other federal courts have consistently come to the same conclusion (see Webster v. Sweat, 5 Cir., 65 F.2d

109), and the same rule has been applied in most of the state courts in which the question has been raised. See, also, In re Cooper, supra. See, also, the opinion of Lehman, Chief Judge, in Leviten v. Sandbank, 291 N.Y. 352, 52 N.E.2d 898; also, the cases cited in the annotation at 111 A.L.R. 487.

So well recognized is this right that we pass to the more important question and one which is not without difficulty and upon which the decisions are not in entire accord. Under what circumstances and in what manner may a court, in ordering a substitution of attorneys, order that the documents in the displaced attorney's hands be delivered to the substituted attorney so that the main litigation may proceed but with due regard to the protection of the rights of the displaced attorney where his fees have not been paid or determined.

Courts have on many occasions approved a summary determination of the value of the attorney's fees so that the substitution of attorney's might be made and the fees of the displaced attorney paid, the attorney's retaining lien discharged, the papers in his possession returned to the client and the litigation proceed without delay or embarrassment. These, however, were all cases in which the determination of the fee was subject to such summary hearing and determination in the main litigation. The clients in the instant case have in effect enhanced the nuisance value of the attorney's retaining lien by making impossible a summary determination of the simple issue of the value of the services by injecting more complicated issues.

In 7 C.J.S. Attorney and Client, sec. 233, p. 1199, it is said that while a retaining lien cannot be enforced by judicial proceedings brought for that purpose (citing cases) "where the attorney is brought into court upon application of his client, to compel the attorney to turn over money or papers upon which he claims a lien * * * the court may ascertain the extent of the lien and

enforce it. * * * However, except by consent the question in dispute cannot be determined by the court in a summary way." Citing the above authority the Appellate Court of Illinois in Armstrong v. Zounis, 304 Ill.App. 537, 26 N.E.2d 670, ordered the dismissal of a suit to foreclose an attorney's lien upon the ground that it appeared that the lien claimed was a retaining lien and not a charging lien.

■ This court has never had occasion to approve such summary hearing nor is it necessary to determine now whether or not such summary procedure should be had in a proper case. That it would not have been proper in the instant case is plain. So delicate is the relationship between attorney and client, so necessary is it that absolute trust and confidence be unimpaired between them that the client has the power (as distinguished from the right) to discharge his attorney at any time. 5 Am.Jur. 281, Attorneys at Law, sec. 34, and cases cited. The contract of employment in the instant case expressly reserved to the clients not only the power but also the right to dismiss the attorneys, conditioned only upon the payment of a reasonable fee for services rendered to date. Despite these conditions the clients did not rely upon their "power" to dismiss their attorneys nor on their contractural "right" to dismiss them without cause, but asserted misconduct and negligence by reason whereof it is alleged that the clients suffered damage in excess of the amount of any fee earned by the attorneys. Thus it is claimed by the clients in the present case that in place of commencing the action against the defendants by September 1, 1947, as agreed, the filing was delayed till December 1; that the attorneys ignored the clients' frequent requests and instructions to bring the demurrer to the complaint on for hearing; that they erroneously permitted certain parcels of real property to be released from the lis pendens; that they thus permitted the defendants to dispose of parcels

that should have been subject to the plaintiffs' equities; that profits to the plaintiffs were lost in addition; that the attorneys made no progress for a period of nine months; that by bringing their action for the recovery of their fees they have "unequivocally" expressed an election for recovery of their fees in that action for the enforcement thereof and to have a jury determine the same; that they handled the litigation "with absolute negligence"; that the rights of the plaintiffs were seriously prejudiced, hindered and impaired. The clients cite authorities to show that it is a breach of the attorney's duty to act inconsistently with the client's express wishes or to refuse to follow his instructions; that the attorney is not entitled to fees when he has been remiss in his duty whereby serious damage to the client's cause of action resulted etc. We have no hesitation in holding that the trial court properly refused to hear and determine these issues in a summary proceeding in the main action.

■ Does this mean that the main litigation must stand in abeyance while the suit for attorney fees and the clients' counterclaim or cross complaint for damages are being litigated? The main litigation might in such case be delayed for months, perhaps years. Such a situation would be intolerable. Though some authorities have frowned upon the practice of ordering the attorney to deliver documents or other property of the clients (thus discharging the attorney's retaining lien) upon giving bond or other security, a case like that presented here finds no other satisfactory solution.

We are not called upon in this case to consider whether the displaced attorney could be deprived of his charging lien upon the substitution of other adequate security. Lehman, J., in a well-considered opinion for the New York Court of Appeals in Robinson v. Rogers, 237 N.Y. 467, 143 N.E. 647, 648, 33 A.L.R. 1291, after reviewing English and New York cases, concludes that the court has no authority in any event to substitute other security for the attorney's charging lien. As to retaining

liens, however, while deploring the lack of cases where the court has compelled the delivery of papers by a discharged attorney, before payment of his fees, upon the giving of security, the court says that "this court has at least assumed the existence of such power," and cites In re Dunn, 205 N.Y. 398, 98 N.E. 914, Ann.Cas.1913E, 536. The court proceeds: "The well-established practice of the courts to compel the attorney to deliver up papers or property under such circumstances in spite of the existence of the attorney's retaining lien thereon does not, however, even by analogy, lead to the conclusion that the courts have power to destroy a charging lien on the client's cause of action attaching to the proceeds of judgment or settlement." It is further said in the Robinson case that probably the English and New York cases approving an order for the delivery of papers "have been based upon the principle that where the retention of papers by the attorney serves to embarrass a client the attorney should be required to deliver up the papers upon receiving proper security for his compensation, because insistence upon his lien under such circumstances is not in accordance with the standard of conduct which a court may properly require of its officers." In the annotation to this case at page 1296 of the A.L.R. citation reference is made to a number of cases in which it was definitely held that on substitution of attorneys delivery of papers could be ordered if the attorney fees were paid or properly secured. In re Prospect Ave., 85 Hun. 257, 33 N.Y.S. 1013; Curtis v. Richards, 4 Idaho 434, 40 P. 57, 95 Am.St.Rep. 134; In re Dunn, 205 N.Y. 398, 98 N.E. 914, Ann.Cas.1913E, 536. The same has been held to be the rule in the federal courts. Everett Clarke & Benedict v. Alpha Portland Cement Co., 2 Cir., 225 F. 931, 938, 141 C.C.A. 55, in which case the court said: "That a court has power to order an attorney to deliver up a client's papers upon the client's giving security in a sum sufficient to answer the attorney's demands is too well established to be called in question." See, also, The Flush, 2 Cir. 277 F.

25. Iowa, South Dakota and other states provide by statute for the releasing of an attorney's lien upon executing a bond, and cases under such statutes are naturally of no assistance here.

Citing Lord Romilly, Master of the Rolls, In re Galland, L.R. 31 Ch. Div. 296, and Mr. Justice Chitty in the same case (both of which are cited in many of the state and federal courts), Mr. Jones in his work on Liens (1 Jones on Liens, 3d Ed., 126) states generally that a court has jurisdiction to order the delivery of the client's papers upon the payment or the security in sufficient sum to answer the solicitor's demand, where his retention of the papers on which he claims a lien would embarrass the client in the prosecution of the pending action.

In California an attorney has no lien upon a judgment rendered in favor of his client as compensation for his services. 3 Cal.Jur. 682. It has no statute similar to ours providing for a charging lien. The author further states, id. 683, that in California there is an entire absence of authority on retaining liens. We mention this in passing in view of comments made by counsel during the oral argument.

The Supreme Court of Idaho, citing Weeks, Attys. secs. 250, 267, and Meachem, Ag. sec. 856, and the cases referred to by those authorities, holds definitely to the rule of the right of the court to order a delivery of papers by the displaced attorney upon paying or securing the fees earned to date. Curtis v. Richards, 4 Idaho 434, 40 P. 57, 95 Am.St.Rep. 134.

Respondents contend that certiorari will not lie in the present instance because petitioners have a right of appeal from the order complained of. Without considering any other answers to this contention we may note simply that our statute does not provide for any appeal from such an order. Respondents also contend that our issuance of the original writ without notice was a violation of due process but cites no authorities

in support of this contention. Under our statute the writ may issue upon notice or after hearing on an order to show cause or without notice (sec. 9232, N.C.L.), and the last of the three methods named in the statute has been often followed by this court. The authority of the court to require the respondents in the meantime to desist from further proceedings in the matter to be reviewed is specifically granted by sec. 9234.

Although the point was not directly raised by respondents either in their written memorandum or in the oral argument, we were for a time somewhat concerned over the possibility that the basis of the order complained of was the lower court's construction of paragraph IV of the retaining contract—that the court might possibly have construed such paragraph as a waiver of the attorney's lien and an election to look personally to the clients for payment. Such situation would have raised for consideration the suggestion that an erroneous construction of the contract would not necessarily have been an act in excess of jurisdiction. We find nothing in the record, however, to indicate that such a situation arose or that the court construed the contract as a waiver of the retaining lien. The record indicates that the court's reasoning was simply that the right of substitution existed and that the substitution would have been a more or less vain act without providing the substituted attorney with the necessary data to enable her to continue the litigation. But, as has been seen, this is the very strength and purpose of an attorney's retaining lien. The court was without jurisdiction to discharge and destroy such lien without providing for the payment or security for the payment of the attorney fee secured thereby.

The clients complain bitterly that the tactics of the attorneys have greatly prejudiced the former's rights, have impeded and retarded the litigation; that two of the plaintiffs are nonresidents of the state, have been held here for many days at great expense and without

avail, and their situation has been further aggravated by our issuance of the writ. But this is the very gist of an attorney's passive retaining lien. · The greater the embarrassment caused to the client, the more effective it becomes. While this may seem harsh, its foundation is sound and it is too well entrenched in our jurisprudence to be disturbed at this time. The time consumed in this court has been comparatively short. We issued the writ on May 10, 1948 and made it returnable June 1. We would have been inclined to advance the date to an earlier return if so requested by respondents—or they could, with our approval, have noticed their motion to quash for an earlier day. Or they might, in noticing their original motion to the lower court for an order for the delivery of the papers, have offered to post bond or other security. Be that as it may, this court has given the matter prompt consideration and action, looking to the protection of the rights of both the clients and the attorneys.

The disposition of the matter involves no further difficulty. The amount of the claim for attorney fees is limited by the prayer of the complaint filed by the attorneys to $10,000. The record indicates negotiation between the parties for a settlement ranging from the offer of the clients to pay a "nuisance value" in the sum of $1,000 to an indicated offer of the acceptance of $9,000. The district court should have no trouble in fixing a proper amount for bond or other security and in passing on the sufficiency thereof. The petition herein alleges the value of $1,240,000 for the properties involved in the main litigation. One of the affidavits filed in this proceeding by the petitioners states that an offer of settlement made by the defendants in the main litigation is in excess of a sum which would return to the petitioners the sum of $10,000 in accordance with their 25% contingent retainer. On the other hand the clients allege that the only offer made was a mere token offer. Accordingly it would seem that the extent of the recovery in

the main action, although presently contingent and possibly problematical, should not make it difficult for the clients to provide such bond or security as may be fixed by the court. The litigation involving the attorney's claim for fees and the client's cross complaint for damages could then be tried and determined in an orderly manner.

It is hereby ordered (1) that the part of the minute order of April 28, 1948, and the part of the formal written order of April 28, 1948, substituting Emilie N. Wanderer for Morse & Graves as attorney for plaintiffs in said action No. 38772 in said district court be, and the same hereby is, affirmed; (2) that the remaining parts of said minute order and said formal written order be, and the same hereby are, modified to provide that Messrs. Morse & Graves deliver to Emilie N. Wanderer within five days from service of such modified order, upon delivery of a good and sufficient bond or other security, or upon the delivery of such bond or security if delivered after such period of five days, all files, papers, pleadings, correspondence and records, including all papers, documents and records heretofore delivered by said plaintiffs or any of them to said Morse & Graves, and including contracts (but not the attorney's copy of the contract of employment), information, data, briefs, title reports, and title searches now in their possession (except private correspondence between Morse & Graves and said plaintiff) as pertain to said action No. 38772 pending in said Eighth judicial district court, entitled Pavlo et al., Plaintiffs, v. Delkin et als., Defendants; (3) that such bond or other security be conditioned upon the payment by the said plaintiffs to the said Morse & Graves of such attorney fees as may be awarded to them by a final judgment in action No. 40612 pending in said district court, entitled Morse & Graves, etc., Plaintiffs, v. Pavlo et als., Defendants, not exceeding the sum of $10,000, and that such bond or other security be in such amount or extent and in such form as may

be approved by said district court, and to the sufficiency, form or extent whereof the said Morse & Graves shall be given opportunity to except, provided, however, that any hearing upon such exceptions be summarily had to the end that said attorneys may on the one hand be promptly secured in the payment of their fees, and that the said plaintiffs may on the other hand be enabled forthwith and without delay or embarrassment to proceed with their main action through their substituted attorney. Costs are not awarded to either party in this court.

HORSEY, J., concurs.

EATHER, C. J., because of illness, did not participate in the above case.