LOIS SARMAN, GUARDIAN OF THE PERSON AND ESTATE OF ELIZABETH RABE, AN INCOMPETENT PERSON, APPELLANT, v. GOLDWATER, TABER AND HILL, RESPONDENT.

No. 4776

November 30, 1964                    396 P.2d 847

*George W. Abbott*, of Minden, for Appellant.

*Goldwater, Taber and Hill,* and *Wayne L. Mortimer,* of Reno, for Respondent.

**O P I N I O N**

By the Court, THOMPSON, J.:

The guardian appeals from a final order entered in a guardianship matter. She had discharged her attorneys and substituted another. The order in question

directed the requested substitution, fixed the fee due the displaced attorneys, and directed them to deliver their files and records to the guardian's new counsel upon payment of the fee or giving appropriate security therefor. The substitution has been made.[1] Three issues are raised on this appeal: Whether the guardian is personally liable to her displaced attorneys for professional services rendered; whether the court in which the guardianship proceeding is pending has jurisdiction to hear evidence and determine the fee to be paid the displaced attorneys, or must such attorneys commence an independent suit for their compensation; whether a fee of $65,790 is a reasonable fee for the displaced attorneys in this case.

The client-attorney relationship between Lois Sarman, Guardian, and the firm of Goldwater, Taber and Hill, her attorneys, lasted for about 14 months. On September 20, 1963, the guardian, by letter, terminated that relationship, requested that her files be delivered to her newly selected counsel George Abbott, and that the displaced attorneys submit their statement for services rendered. The displaced firm responded by letter, advising the guardian: "You are hereby notified that Goldwater, Taber and Hill, Attorneys at Law, 206 North Virginia Street, Reno, Nevada, have a general or retaining lien on all of the files, records, documents in our possession by virtue of our professional relationship. We will be pleased to comply with your request that we withdraw as your attorneys in the guardianship, substitute George W. Abbott, Esq., First National Bank Building, Minden, Nevada, and transfer all files, records and documents in our possession to him. Before doing so, however, we must insist on payment in full of all fees, costs, and disbursements due us." The law firm's statement for services in the sum of $65,790 was shortly thereafter submitted to the guardian. Following this exchange of correspondence the guardian, through her new counsel, by motion, sought to compel her former

---

[1]Because there has been full compliance with the order in the respect mentioned we will not consider certain claimed procedural irregularities which the guardian has assigned as error. The questions raised thereby are moot.

counsel to deliver the files and records. The court designated a hearing date, at which time that motion was heard and evidence concerning the value of the displaced attorneys' services was received. The guardian did not object to the power of the lower court to hear evidence and determine the fee due her displaced attorneys, but consented to the procedure outlined by the court. It is within this context that we turn to discuss the first and second issues of this appeal.

A guardian who employs counsel in behalf of the ward's estate is personally obligated to pay for counsel's services. The attorney-client relationship is between the guardian and counsel. It is not between the ward and counsel. The attorney's fee is an expense incurred by the guardian in the performance of her duties for which she is personally liable. In re Boyd's Guardianship, 37 N.M. 83, 18 P.2d 658. The expense is authorized by statute (NRS 159.570) and the guardian will, in turn, be entitled to a credit therefor in her accounting if the services of counsel were necessary and the charges reasonable.[2] Thus, in most cases, the ward's estate will, if able, ultimately pay for counsel's services. This probability, however, does not serve to erase the guardian's personal liability to counsel. Accordingly, we find no validity to the guardian's contention here that it was improper for the lower court to enter a personal judgment against her for the fee of displaced counsel.

The guardian's contention that the lower court lacked power or jurisdiction to fix the fee of the displaced counsel and enter a binding judgment in the guardianship proceeding is equally unsound. Whatever the law may be in other jurisdictions to which she has referred us, it is settled beyond doubt in Nevada. Whether the fee should be determined in the proceeding in which the attorneys have rendered their services, or resort had to an independent suit, poses a problem of choice rather

---

[2]NRS 159.570 in pertinent part reads: "Every guardian shall be allowed his or her reasonable expenses incurred in the execution of his or her trust * * *."

than one of jurisdiction. In Earl v. Las Vegas Auto Parts, 73 Nev. 58, 307 P.2d 781, the amount of the fee due the displaced attorney was fixed in the case in which his services were performed, but was collected by independent suit, the court concluding that the amount so determined was res judicata in the subsequent suit. Also in Morse v. District Court, 65 Nev. 275, 195 P.2d 199, the attorneys filed an independent suit. On the other hand, in Gordon v. Stewart, 74 Nev. 115, 324 P.2d 234, it was squarely held that power exists to enter a binding judgment for the displaced attorneys' fee in the pending matter without resorting to an independent suit. The Earl case involved, inter alia, the attorney's statutory charging lien (NRS 18.010) against the consent judgment obtained. The Morse case dealt with the displaced attorney's common law retaining lien, while the Gordon case involved neither. There the withdrawing attorneys simply asked the court to fix the compensation due them for services performed prior to their withdrawal. The attorney's right to be paid is not based upon, or limited to, his lien. It is based upon a contract, express or implied. The lien is but security for his right. Gordon v. Stewart, supra. Thus, the power of the court to act is quite unrelated to the nature of the lien sought to be enforced.[3] For example, in the instant matter, the court below had the power to fix the fee due the displaced counsel whether they chose to assert their retaining lien or not.

Basically, the jurisdiction of the lower court rests upon constitutional provision. Art. 6, § 6 of the Nevada Constitution invests the district court with original jurisdiction in all cases relating to the persons and estates of minors and insane persons. The guardianship at hand concerns an incompetent adult. To implement the organic law, the legislature passed NRS 3.210 which provides, in part, that the district courts shall have

---

[3]The distinction between the statutory charging lien and the common law retaining lien is beautifully articulated in Morse v. District Court, 65 Nev. 275, 195 P.2d 199.

the power to grant and revoke letters of guardianship, compel the guardian to account, compel the attendance of witnesses, "and to make such other orders as may be necessary and proper in the exercise of the jurisdiction conferred upon them by law." Having in mind the quoted portion of the last sentence, the language in the Earl and Gordon cases to the effect that the court in which the attorney rendered his services has "incidental jurisdiction" to resolve disputes between client and attorney is particularly meaningful. We perceive no valid basis for a distinction between a dispute over fees arising in a civil action and a dispute arising during the course of a guardianship proceeding. In either instance, the court in which the case or proceeding is pending has the power to resolve the fee controversy.

Whether it is wise to fix the fee for displaced counsel and enter judgment therefor in the pending matter, or direct counsel to proceed by independent suit, is a different question and one not presented on this appeal. Of course circumstances sometimes point to an independent suit as the preferred choice. For example, in Morse v. District Court, supra, the client charged that his counsel had been guilty of negligence and misconduct and was not entitled to a fee. This court held that in such circumstances it was proper for the trial court to refuse to decide those issues in a summary proceeding in the pending case. An independent action was preferable. In the instant matter the client did not charge counsel with any impropriety. To the contrary, she requested that their statement be submitted to her. The only matter in dispute was the amount of the charge. Nor did the new counsel for the guardian register objection to a resolution of the dispute within the guardianship matter. Had he done so, given security to satisfy the fee claimed to be due (cf. Morse v. District Court, supra) and demanded a jury trial (Nev. Const., Art. 1, § 3), perhaps the lower court would have refused to proceed further. Instead, he consented to the proceeding below. He may not now complain. In Morse

v. District Court, supra, the court stated: "This court has never had occasion to approve such summary hearing nor is it necessary to determine now whether or not such summary procedure should be had in a proper case." We now decide that, upon the circumstances here disclosed, it was permissible for the lower court to resolve the fee problem by a summary procedure in the guardianship proceeding.

We turn to the final issue raised by the guardian's contention that a fee allowance of $65,790 is so excessive as to constitute an abuse of discretion. The award is supported by the evidence. In re Jacobson's Guardianship, 30 Cal.2d 312, 182 P.2d 537. One of the expert witnesses believed that a fee of $81,000 was justified. The prime asset of the ward's estate is approximately 500 acres of real property near Stateline, Lake Tahoe. Its value is conservatively estimated at $2,000,000. The ward has other property, valued at about $193,000. Management of the Lake Tahoe property, the planned liquidation of some of it to pay the estate tax liability of the ward's deceased husband, and other debts, tax consequences, future estate planning, were some of the problems to which displaced counsel devoted their attention. Their legal responsibility is shown to have been competently discharged, and their work skillfully performed. The lower court did not abuse its discretion in its determination of the reasonable value of their services.

Affirmed.

BADT, C. J., and MCNAMEE, J., concur.