FOOR, APPELLEE, *v.* HUNTINGTON NATIONAL BANK ET AL.; BILLMAN, APPELLANT.

(No. 85AP-167 — Decided February 11, 1986.)

*Robert G. Palmer* and *Judith D. Moss,* for appellee.

*Crabbe, Brown, Jones, Potts & Schmidt, Jeffrey M. Brown* and *William T. McCracken,* for Huntington National Bank et al.

*Donald Lynn Billman, pro se.*

WHITESIDE, J. This is an appeal from an order of the Franklin County Court of Common Pleas overruling a motion of appellant, Donald Lynn Billman, to quash a subpoena duces tecum issued against him by plaintiff-appellee, Roberta Jean Foor, requiring Billman, an attorney, to produce papers in his possession relating to his former representation of plaintiff prior to institution of the present action by her.

Billman is not a party to this case but, instead, is a witness against whom a subpoena duces tecum was issued upon plaintiff's request requiring Billman to appear and to bring with him:

"All records in your possession relative to a certain Note and Mortgage purportedly signed by Roberta Jane [*sic*] Foor on January 20, 1976, in favor of Huntington National Bank; including, but not limited to, communications with Huntington National Bank, documents, case files, account records of services rendered and charges therefor, etc."

Billman filed a motion to quash the subpoena duces tecum upon the ground that he has an attorney's retaining lien upon the papers in question for amounts due him for representation of plaintiff in connection with the prior matters.

The trial court had sustained a

similar motion with respect to a prior subpoena duces tecum but, in overruling the present motion to quash, the trial court rendered a written decision stating in pertinent part:

"2. [It is a] general principle of Ohio law, subject of course to exceptions, that an attorney has [a] lien on the documents in his possession until the client has paid the reasonable value of the attorney's services.

"3. The client may obtain the papers and property to which he is entitled.

"The best reasoned approach in Ohio and other jurisdictions appears to be that an attorney's lien for services must be secondary to the right of a litigant to evidence necessary for the prosecution of a case depending upon items in the possession of the litigant's former attorney.

"* * *

"The Court has reviewed the file herein to determine the need plaintiff might have for the papers in her previous transactions with defendant through the office of Donald Billman.

"From the pleadings and interrogatories filed herein, the Court finds that the principles of law, evidence and discovery involved call upon the Court to order disclosure by attorney Donald Billman, for inspection and copy, of such papers as are in his possession relating to his former representation of plaintiff.

"The Court is reluctant to order the papers released while there appears to be an active dispute as to compensation for attorney's services, but plaintiff's need for and right to the documents must be the overriding consideration."

In support of this appeal, Billman has raised five assignments of error as follows:

"1. The trial court erred in directing plaintiff's former attorney to permit plaintiff's present '* * * counsel or other representative of plaintiff * * * to inspect and copy * * *' the file which said former attorney prepared in regard to his representation of plaintiff and otherwise erred in not quashing plaintiff's subpoena duces tecum.

"2. The trial court erred in not protecting plaintiff's former attorney's retaining lien rights once they were asserted as a defense to the demand that his file be produced for inspection and copying by plaintiff's present counsel upon her subpoena duces tecum.

"3. The trial court erred in ordering plaintiff's former attorney to permit a blanket inspection and copying of his file without requiring the plaintiff or her present attorney to identify those papers to which she claimed to be legally entitled and to further conclusively establish how, by what theory, she became entitled to something which she has not paid for.

"4. The trial court erred in ordering plaintiff's former attorney to permit inspection and copying of the file which he prepared at an earlier day in regard to his representation of plaintiff upon which he claims a lien for legal services performed by him without having, as a condition precedent, required the former client to pay, or guarantee payment with a surety bond in an amount satisfactory to the former counsel, the legal services fee due her former attorney.

"5. The trial court erred in not convening a summary proceeding for the purpose of determining the legal fees due the former counsel."

The threshold issue raised by plaintiff Foor is whether the order from which Billman appeals is a final appealable order or, in other words, whether Billman has a right of appeal from the order overruling his motion to quash the subpoena duces tecum.

Ordinarily, a motion to quash a subpoena duces tecum is not a final appealable order. *In re Coastal States Petroleum* (1972), 32 Ohio St. 2d 81 [61 O.O.2d 333]. See, also, *Cobbledick* v.

*United States* (1940), 309 U.S. 323. On the other hand, it has been held that an order overruling a motion to quash a subpoena duces tecum issued to a nonparty witness is appealable since the nonparty witness has no recourse other than to appeal from the order overruling the motion to quash. *Covey Oil Co.* v. *Continental Oil Co.* (C.A. 10, 1965), 340 F. 2d 993, 997. Similarly, an order with respect to a subpoena duces tecum was found appealable in *United States* v. *Nixon* (1974), 418 U.S. 683, wherein the Supreme Court stated at 690-691:

"The finality requirement of 28 U.S.C. § 1291 embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals. * * * In applying this principle to an order denying a motion to quash and requiring the production of evidence pursuant to a subpoena *duces tecum,* it has been repeatedly held that the order is not final and hence not appealable. * * * This court has

['] 'consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.' * * *

"The requirement of submitting to contempt, however, is not without exception and in some instances the purposes underlying the finality rule require a different result. For example, in *Perlman* v. *United States,* 247 U.S. 7 (1918), a subpoena had been directed to a third party requesting certain exhibits; the appellant, who owned the exhibits, sought to raise a claim of privilege. The Court held an order compelling production was appealable because it was unlikely that the third party would risk a contempt citation in order to allow immediate review of the appellant's claim of privilege. * * * That case fell within the 'limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims.' * * *"

R.C. 2505.02 permits appeals from an order made in a special proceeding affecting a substantial right. In defining what constitutes a special proceeding, and affects a substantial right, the Supreme Court has adopted a balancing test, weighing the harm to the prompt and orderly disposition of litigation against the need for immediate review because of impracticality of appeal after final judgment. See *Guccione* v. *Hustler Magazine, Inc.* (1985), 17 Ohio St. 3d 88; *Russell* v. *Mercy Hospital* (1984), 15 Ohio St. 3d 37; and *Amato* v. *General Motors Corp.* (1981), 67 Ohio St. 2d 253 [21 O.O.3d 158].

The right of an attorney to a retaining lien is a substantial right. Enforcement of the subpoena duces tecum would destroy the effectiveness of that retaining lien. Delay until after final judgment between the parties to this action would be of no avail to appellant Billman since the issues involved would be essentially moot because of enforcement of the subpoena duces tecum. As stated in *Amato, supra,* at 258:

"* * * [W]e determine that whether an order is made in a special proceeding is resolved through a balancing test. This test weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable."

As the court stated in *Amato,* it is not at all certain that judicial resources are wasted by allowing immediate review of an order overruling a motion of a nonparty witness to quash a subpoena duces tecum since the issues

would be the same, and there would be no effect upon the main litigation between the parties to the action by an immediate appeal other than the possibility of some delay in the proceedings. On the other hand, in this case no effective order affording a remedy to the nonparty witness could be entered after final judgment between the parties to the action.

Accordingly, applying the principles of *Amato, Russell* and *Guccione*, we find that, under the unique circumstances involved, the order overruling the motion of the nonparty witness, Billman, to quash the subpoena duces tecum is a final appealable order.

The issues raised by assignments of error one, two and four are interrelated and will be discussed together.

Although there is little Ohio authority as to the retaining lien of an attorney upon his client's papers, its existence has been recognized. *Newcomb* v. *Krueger* (1930), 36 Ohio App. 469. A retaining lien against a client's papers and property differs from a charging lien upon a monetary judgment obtained by the attorney, which has been judicially recognized. See *Cohen* v. *Goldberger* (1923), 109 Ohio St. 22.

A retaining lien is a common-law lien of an attorney attaching to all property, papers, documents and monies of the client coming into the attorney's hands during the course of his representation of the client and gives the attorney the right to retain possession of such property, papers, documents and money as security for fees and expenses due the attorney in connection with the professional relationship between the attorney and client. However, a retaining lien is a passive lien and cannot ordinarily be actively enforced. Instead, the lien exists as leverage over the client through the embarrassment or inconvenience caused by the attorney's withholding property and papers of the client which are in his possession. Generally,

the lien is discharged only by payment of the fees and expenses, by the attorney's voluntarily relinquishing possession of the property, papers and documents to which the lien has attached, by the attorney's wrongful termination of the attorney-client relationship or by termination thereof by the client for wrongful acts of the attorney. See Annotation (1949), 3 A.L.R.2d 148. Thus, it is stated in *Everett, Clarke & Benedict* v. *Alpha Portland Cement Co.* (C.A. 2, 1915), 225 F. 931, at 935-936:

"An attorney's general or retaining lien is a common-law lien, which has its origin in the inherent power of courts over the relations between attorneys and their clients. The power which the courts have summarily to enforce the performance by the attorney of his duties toward his client enables the court to protect the rights of the attorney as against the client. This lien is one which the courts have long recognized and protected. Almost 200 years ago, in a case before Lord Chancellor Talbot, Ex parte Bush, 7 Viner's Abr. 74 (1734), it was held that:

" 'The attorney hath a lien upon the papers in the same manner against assignees as against the bankrupt, and though it does not arise by any express contract or agreement, yet it is as effectual, being an implied contract by law.'

" * * *

"In *McPherson* v. *Cox,* 96 U.S. 404, 417, 24 L. Ed. 746 (1877), the Supreme Court, in a case which came up from the District of Columbia, declared that an attorney has a lien by law, apart from any express agreement, on the papers of his client in his hands, for all that is due him as an attorney. And the courts of the local jurisdiction also recognize the attorney's retaining lien. *Matter of Dunn,* 205 N.Y. 398, 98 N.E. 914, Ann. Cas. 1913E, 536 (1912)."

In a later case, the same court held in *The Flush* (C.A.2, 1921), 277 F. 25, that the client has no right to inspect the

papers held by the attorney under the retaining lien, stating in part at 30-31:

"As a matter of principle, and without regard to authorities, it seems to us that a client's right to inspect the papers upon which the attorney's lien exists should be denied. His lien is a mere retaining lien, and gives him only a right to retain them until his charges are paid. He has no right of sale, and his right of retention is valuable only in proportion as the papers are valuable to his client. The leverage which the possession of the papers affords depends upon how embarrassing to the client the possession of them by the attorney is. If the client is given the right to inspect the papers or to compel their production while the lien continues, it certainly impairs the value of the lien, as it diminishes the embarrassment caused by the attorney's retention of them, and might make them valueless to the attorney, and the lien nugatory. * * *"

Similarly, in *Davis* v. *Davis* (Mass. Cir. Ct. 1898), 90 F. 791, it was held that an attorney having a retaining lien cannot be compelled to produce papers by a subpoena duces tecum issued on behalf of the client, the court stating at 792:

"* * * That an attorney's lien on his client's papers should not be permitted to embarrass a third person in no way liable for the debt is reasonable, but, if an attorney's lien upon his client's papers amounts to anything, I think he may assert it as against the client, even when summoned by him to produce the papers by a subpoena duces tecum. The value of the lien often lies almost altogether in the power to withhold the papers from use as evidence, and that the debtor client should be allowed by a subpoena duces tecum to make practically worthless his creditor's lien seems to me unjust. * * *"

Some courts, however, have taken an intermediate course and required the attorney to produce the papers for use of his client pursuant to a subpoena duces tecum, conditioned upon the client giving security for payment of the fee secured by the retaining lien. See *Yaron* v. *Yaron* (1977), 58 App. Div. 2d 752, 396 N.Y.Supp. 2d 225; *Morse* v. *Eighth Judicial District Court* (1948), 65 Nev. 275, 195 P.2d 199; and *Upgrade Corp.* v. *Michigan Carton Co.* (1980), 87 Ill. App. 3d 662, 410 N.E. 2d 159. In *Morse, supra* (65 Nev. at 291, 195 P. 2d at 206-207), it is stated succinctly that: "* * * The court was without jurisdiction to discharge and destroy such lien without providing for the payment or security for the payment of the attorney fee secured thereby."

Although, in some cases, a summary proceeding to determine the amount due the attorney from the client has been utilized in order to determine the amount of the security, we do not feel this necessary in this case. The amount of the fee claimed is $975, plus interest. Security for the payment of any amount eventually found due to Billman from plaintiff could be given. The rationale of enforcing the subpoena duces tecum upon the giving of appropriate security is a substitution of the security for the retaining lien. Although some of the coercive effect of the retaining lien may be diminished, this is counterbalanced by an assurance to the attorney that he will be paid in the event that he seeks and obtains a judgment for the fees remaining unpaid.

Turning specifically to the assignments of error, the first, second and fourth assignments of error are well-taken to the extent that the trial court enforced the subpoena duces tecum requiring Billman to produce papers to which his retaining lien attached, without requiring plaintiff to furnish security as a substitute for the retaining lien to assure payment of the attorney fees when and if payment thereof is otherwise enforced.

The third assignment of error, however, is not well-taken. First, there

is no transcript of proceedings indicating the extent to which plaintiff needed to inspect papers to which Billman's retaining lien attached in preparing to present the present case. Second, the trial court expressly found necessity to inspect the papers to exist, and we have no basis to "second guess" this finding of the trial court.

Similarly, the fifth assignment of error is not well-taken under the circumstances of this case. Although a summary proceeding for determining the amount of legal fees due in order to determine the amount of security necessary has been utilized in some jurisdictions in connection with compelling production of the papers to which the retaining lien attached, we see no necessity for such a procedure in this case, even assuming that the trial court within its discretion could conduct such a summary proceeding. Billman apparently claims $975 due him from plaintiff as legal fees. In addition, Billman has sought interest upon the amount due. We find no authority, and none has been cited, indicating that the retaining lien attaches not only to the attorney fees due but also to accrued interest thereon, even though the attorney may legally be entitled to recover interest, as well as the fee.

Even if the amount due be disputed, the maximum amount due Billman from plaintiff is easily ascertainable and, thus, security can be required in that amount, which would not appear to be an onerous burden upon plaintiff. In those cases where security in the amount of the fees claimed by the attorney might impose an onerous burden upon a client who disputes the amount of the fees, a summary proceeding might be appropriate. However, there is no demonstration of such need in this case and, in any event, it would not be prejudicial to Billman since, in the absence of a summary proceeding, the security would be in the amount of the fees claimed.

For the foregoing reasons, the first, second and fourth assignments of error are sustained, and the third and fifth assignments of error are overruled. The order of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to enforce the subpoena duces tecum only upon the giving of adequate security by plaintiff as a substitution for Billman's retaining lien in such amount as that court in its discretion may find necessary.

*Order reversed and*
*cause remanded with instructions.*

STRAUSBAUGH and NORRIS, JJ., concur.