TERRY MARIE FIGLIUZZI, PETITIONER, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE JERRY CARR WHITEHEAD, DISTRICT JUDGE, RESPONDENTS, AND SILVERMAN & DECARIA, CHARTERED, REAL PARTY IN INTEREST.

No. 25467

March 2, 1995

890 P.2d 798

*Beasley, Holden & Kern,* Reno, for Petitioner.

*Silverman & Decaria, Chtd.* and *Marta Torrez,* Reno; and *Jones, Jones, Close & Brown* and *Paul A. Lemcke,* Las Vegas, for Real Party in Interest.

## OPINION

*Per Curiam:*

Petitioner, Terry Marie Fields-Figliuzzi (Figliuzzi), seeks a writ of certiorari from this court on grounds that the district court was either without jurisdiction or exceeded its jurisdiction in enforcing a passive attorney's retaining lien at the instance of the attorneys rather than their client, Figliuzzi. For the reasons discussed hereafter, we agree and order issuance of the writ.

### FACTS

On May 21, 1992, petitioner Figliuzzi retained the firm of Silverman & Decaria, Chtd. (the firm) to represent her in a domestic relations suit which remains pending in the Eighth Judicial District Court.[1] The firm's attorney's fees on the underlying suit currently total $25,827.19. Figliuzzi paid the firm a $5,000.00 retainer and voluntarily agreed to execute a partial

---

[1]The referenced suit is entitled Donald M. Mosley and Donald Joseph Figliuzzi, a minor child, by and through his Guardian ad Litem John J. Graves, Petitioners, v. Terry Marie Figliuzzi, Respondent, Case No. D149228.

assignment of proceeds for $15,000.00 in favor of the firm from the unrelated case of Flamingo Realty, Inc., et al. v. Midwest Development, Inc. et al., then pending in this court (Case No. 23544). The *Flamingo Realty* case concluded favorably for Figliuzzi in the district court and ultimately terminated favorably for Figliuzzi in this court. *See* Flamingo Realty, Inc. v. Midwest Development, Inc., 110 Nev. 984, 879 P.2d 69 (1994). The firm did not represent Figliuzzi in the *Flamingo Realty* case and has no interest in that case other than the referenced partial assignment of proceeds.

In July 1993, after the firm represented Figliuzzi in a lengthy hearing on a motion to modify custody, Figliuzzi became dissatisfied with the firm's representation and requested the return of her file. In response, the firm requested that Figliuzzi execute a second partial assignment of proceeds from the *Flamingo Realty* judgment for the remaining $6,732.53 in legal fees. Figliuzzi refused, and no formal discharge of the firm ever occurred. Figliuzzi claims that the firm ceased representing her because she refused to pay the requested fees. The firm contends that by expressing dissatisfaction with the firm's representation, requesting the file, and refusing to secure the firm's fees, Figliuzzi impliedly discharged her attorneys.

The firm contends that Figliuzzi's actions resulted in tension between the ethical obligation to protect the client's interest and the firm's legitimate interest in securing its fees by retaining the file. The firm informed Figliuzzi of its decision to relinquish the file to her, but alleged that Figliuzzi did not pick up the file until November 10, 1993, two days after the district court issued the original order which initiated this petition.

In the interim (August 30, 1993), the firm mailed a Motion to Increase Assignment of Proceeds to Secure Fees to the Eighth Judicial District Court Clerk's Office (which was later filed on September 8, 1993), to Figliuzzi's counsel, and to Figliuzzi at her last known address, and faxed a copy to Figliuzzi's place of employment. On September 3, 1993, Figliuzzi called the firm and gave a secretary a new mailing address. On October 8, 1993, the firm faxed a letter to Figliuzzi's new address, informing Figliuzzi that a telephone conference had been scheduled with Judge Whitehead on October 13, 1993. Figliuzzi claims that she received this letter on October 12, 1993, and, by telephone, told the firm that she would not participate in the conference.

On October 13, 1993, the telephone conference occurred between Judge Whitehead, the firm, and Attorney Carl E. Lovell, Jr.; Figliuzzi did not participate in the conference. On November 8, 1993, the district court ordered Figliuzzi to execute a second Partial Assignment of Proceeds against the pending *Flamingo*

*Realty* case to secure her attorney's fees or to otherwise provide security for payment of the fees in lieu of the attorney's retaining lien held by the firm.[2]

As indicated above, Figliuzzi obtained her file on November 10, 1993, and gave the firm a check for the firm's copy costs; Figliuzzi later stopped payment on the check. The firm mailed Figliuzzi a copy of the Order, and a Notice of Entry was filed on November 24, 1993. Subsequently, the firm sent copies of the order to Figliuzzi with an explanatory letter regarding Figliuzzi's responsibilities under the Order. Figliuzzi did not respond, so the firm successfully moved the district court to appoint the Court Clerk of the Second Judicial District to sign the partial assignment on Figliuzzi's behalf.

## DISCUSSION

NRS 34.020(2) provides:

> The writ [of certiorari] shall be granted in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy.

In a proceeding in certiorari, this court's inquiry "is limited to the question as to whether the action of the district court was without jurisdiction or in excess of its jurisdiction." Beyer v. Second Judicial District Court, 67 Nev. 480, 483, 221 P.2d 1024, 1025 (1950).

Figliuzzi contends that the district court was without or exceeded its jurisdiction in: (1) ordering Figliuzzi to grant the firm a secured interest in the unrelated *Flamingo Realty* case; and (2) directing the clerk of the court to execute an assignment of her interest in the case in favor of the firm. She also claims that she has no right of appeal from the orders and that she has no plain, speedy and adequate remedy other than a writ of certiorari. We agree.

---

[2]Judge Whitehead's written order was entered on November 16, 1993. The order provided:

Respondent, Terry Figliuzzi (Fields) is ordered to immediately provide security for payment of the balance of attorney's fees due moment [sic] in the amount of $21,732.53. Respondent may secure the indebtedness by execution of a further partial assignment of the proceeds from her lawsuit in the matter entitled: Flamingo Realty, Inc., et al. v. Midwest Development, Inc., et al., now pending on appeal to the Nevada Supreme Court, by bond, or by any other means available to her. Respondent shall provide said security and Assignment in lieu of movant's attorney retaining lien.

In Nevada, there are two types of liens an attorney may hold to ensure that clients pay their attorney's fees: (1) a special or charging lien on the judgment or settlement the attorney has obtained for the client, NRS 18.015(1); Morse v. Eighth Judicial District Court, 65 Nev. 275, 281, 195 P.2d 199, 202 (1948); and (2) a general or retaining lien that entitles an attorney, if discharged by the client, to retain the client's papers, property or money until a court, at the request of the client, requires the attorney to deliver the retained items upon the client's furnishing of payment or security for the attorney's fees. *Morse,* 65 Nev. 275, 281, 286, 195 P.2d 199, 202, 204, (1948); *see also* In re Grand Jury Proceedings, 727 F.2d 941 (10th Cir.), *cert. denied,* Vargas v. United States, 469 U.S. 819 (1984). Because the firm has not obtained a settlement or judgment for Figliuzzi, only the general or retaining lien is at issue. This "passive" retaining lien depends on actual possession of papers or funds and cannot be actively enforced in judicial proceedings. *Morse,* 65 Nev. at 282-84, 195 P.2d at 202-04. A court is "without jurisdiction to discharge and destroy such lien without providing for the payment or security for the payment of the attorney fee secured thereby." *Id.* at 291, 195 P.2d at 206-07.

Figliuzzi maintains that a general or retaining lien does not apply in the instant case because she did not request the district court to order the firm to return her file and the firm voluntarily relinquished or agreed to relinquish the file to her, thus waiving the firm's right to the lien. Figliuzzi also insists that no statutory or common law authority validates the district court's orders, and that accordingly, the district court acted without jurisdiction in ordering Figliuzzi to provide security in substitution of the firm's erstwhile general or retaining lien.

The firm contends that Figliuzzi's request defies long-standing case law supporting a trial court's authority to adjudicate attorney's fees and enforce attorney's liens for fees in matters before it. *See* Earl v. Las Vegas Auto Parts, Inc., 73 Nev. 58, 307 P.2d 781 (1957). In light of the tension assertedly created by the Rules of Professional Conduct, the firm suggests that this court should not rule against it for attempting to strike a balance between the interest of its client in obtaining her file and the firm's interest in securing its fees.

Moreover, the firm maintains that the district court validly ordered substitute security for the firm's retaining lien because at the time of the order, the firm still retained possession of Figliuzzi's file. Consequently, the firm insists that in formally

discharging its existing retaining lien, the court had no jurisdiction to do other than substitute payment or security for the payment of that lien. Morse v. Eighth Judicial District Court, 65 Nev. 275, 291, 195 P.2d 199, 206-07 (1948).

We conclude that the district court exceeded its jurisdiction in ordering substitute security for the retaining lien because the firm, rather than its client, requested the substitution. As Figliuzzi notes, only the client may request the court to compel an attorney, who is holding papers under a retaining lien, to relinquish the papers. " '[W]here the attorney is brought into court *upon application of his client,* to compel the attorney to turn over money or papers upon which he claims a lien * * * the court may ascertain the extent of the lien and enforce it.' " *Id.* at 286, 195 P.2d at 204 (quoting 7A C.J.S. *Enforcement of Retaining Lien* § 390 (1980)) (emphasis added). The district court's authority to "enforce" the return of the client's papers depends solely on the client's willingness to provide substitute security. Thus, even if Figliuzzi had requested the district court to compel the firm to return her papers, the district court could not have properly ordered Figliuzzi or the clerk of the court to execute an assignment in the firm's favor. The district court's power is limited to ordering the attorney to return papers upon the client's presentment of adequate security. *See Morse,* 65 Nev. at 289, 195 P.2d at 205-06. The district court cannot order the client to provide adequate security. If the client does not provide the required substitute security, the court is without jurisdiction to order the attorney to return the requested papers and the client must suffer the consequent embarrassment. *See id.* at 275, 285, 291, 195 P.2d at 199, 204, 206-07.

It has also been stated that:

> [T]he majority of the cases in which the question has arisen have taken the view that a client may require the delivery of papers or documents held by his attorney under a retaining lien, upon the furnishing of adequate bond or other security, it being pointed out in some instances that the purpose of the lien is to secure payment, and that, though the lien is surrendered, payment is nevertheless insured, or, even further, that the attorney is benefitted by the substitution of the security for the lien, since the lien itself is only passive, and so not enforceable, while the security is enforceable.

L.S. Tellier, Annotation, *Attorney's Lien on Client's Papers,* 3 A.L.R. 2d 155, 155-56 (1949). That the client, and not the attorney, may ask the court to compel the attorney to deliver

papers is significant because the value of the retained papers is determined by the client. " 'The leverage which the possession of the papers affords depends upon how embarrassing to the client the possession of them by the attorney is.' " *Morse,* 65 Nev. at 285, 195 P.2d at 204 (quoting The Flush, 277 F. 25, 31 (2d Cir. 1921), *cert. denied,* 257 U.S. 657 (1922)). "The greater the embarrassment caused to the client, the more effective [the retaining lien] becomes." *Id.* at 292, 195 P.2d at 207. If the client has no interest in the retained papers, the attorney's retaining lien is worthless and the purpose of the lien—which is to secure payment—is defeated. *Id.* By granting the firm's motion and ordering Figliuzzi and later the clerk of the court to execute a partial assignment, the district court effectively transmuted the firm's retaining lien into an enforceable lien, thereby drastically altering its function and purpose.

## CONCLUSION

For the reasons discussed above, we conclude that the district court exceeded its jurisdiction in granting the firm's motion, and we grant this petition. The clerk of this court shall forthwith issue a writ of certiorari directing the district court to vacate its orders directing Figliuzzi or the district court clerk to execute a partial assignment in favor of the firm.