[Cite as *Mezatasta v. Ent. Hill Farm*, 2016-Ohio-3371.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY


Kasandra Mezatasta                                    Court of Appeals No. E-15-037

        Appellee                                      Trial Court No. 2013-CV-0143

v.

Enterprise Hill Farm, et al.                          **DECISION AND JUDGMENT**

        Appellant                                     Decided:  June 10, 2016

* * * * *

Margaret M. Murray and Florence J. Murray, for appellee.

Patric Kasson, Justin D. Harris, and Acacia Perko, for appellant,
Gerald S. Steinman.

Colleen A. Mountcastle and Melanie R. Irvan, for amicus curiae The Ohio
Association of Civil Trial Attorneys.

* * * * *

**JENSEN, P.J.**

{¶ 1} Appellant, Gerald S. Steiman, M.D., appeals the June 4, 2015, and June 24, 2015 judgments of the Erie County Court of Common Pleas. For the reasons that follow, we affirm as to the June 4, 2015 judgment, but reverse as to the June 24, 2015 judgment.[1]

## I. BACKGROUND

{¶ 2} Plaintiff-appellee, Kasandra Mezatasta, filed suit against defendant-appellee, Seth Tinker, and his employer, Enterprise Hill Farm, for injuries she sustained in a February 24, 2011 automobile accident with Tinker. Tinker was allegedly acting in the scope of his employment with, and operating a vehicle owned by, Enterprise Hill. Defendants retained neurologist, Dr. Gerald Steiman, to perform an independent medical examination ("IME") of Mezatasta.

{¶ 3} On March 26, 2015, Mezatasta served Dr. Steiman with a subpoena ordering him to appear for deposition on April 23, 2015, and to:

> Bring with you the following records and documents for inspection, which are in your possession and under your control. In lieu of your appearance at this deposition, you may produce the following documents and records by mailing the same to the undersigned attorney: copies of your tax returns and 1099 forms for the tax years of 2009-2014.

---

[1] The order dated June 24, 2015, was journalized on June 26, 2015, but because the parties consistently refer to the order by the date it was filed-stamped, we do so in this decision as well.

2.

{¶ 4} In correspondence dated April 20, 2015, Dr. Steiman objected to producing his personal tax returns. He instead volunteered information about the number of IMEs he had performed in the previous three years and the income he received from those IMEs.

{¶ 5} Plaintiff's counsel and defense counsel communicated via email about the documents requested of Dr. Steiman and Dr. Steiman's proposed compromise. Plaintiff's counsel responded that the dispute could be resolved if Dr. Steiman would also produce a list of cases in which he prepared expert reports for the preceding three years, along with a designation as to which party (plaintiff or defendant) had retained him. Dr. Steiman refused this alternative, claiming that the request was equally intrusive and burdensome.

{¶ 6} On April 23, 2015, defendants-appellees filed a motion to quash the subpoena and for a protective order. They acknowledged that only the person subpoenaed has standing to file a motion to quash, but they explained that Dr. Steiman requested that defense counsel address the issue on his behalf. Defendants-appellees argued that the subpoena is ambiguous because the body of the subpoena directed Dr. Steiman to bring to a deposition "records and documents" that were "in [his] possession and under [his] control," without further explanation; that, as worded, the subpoena seeks records protected by the physician-patient privilege; that the requested tax records include information about all sources of income—not just IMEs—and are, therefore, not relevant to the proceedings; and that it would be unduly burdensome for Dr. Steiman to produce "records and documents" that are in his possession and under his control. They

3.

urged that Mezatasta's requests were "not typical" of those usually made of defense experts. And they emphasized that the information Dr. Steiman voluntarily provided to Mezatasta about the number of IMEs performed and the income derived from those IMEs was sufficient to permit Mezatasta to cross-examine him as to potential bias.

{¶ 7} In response to defendants-appellees' motion, Mezatasta argued that Dr. Steiman was in contempt of court because he failed to timely comply with the subpoena or move to quash or modify it for one of the enumerated reasons set forth in Civ.R. 45. She claimed that defendants-appellees did not have standing to move to quash the subpoena. And she maintained that defendants-appellees offered no support for their contention that the tax records were protected by physician-patient privilege or that production of the records would be unduly burdensome. Mezatasta insisted that it was of no matter whether the requests were "typical."

{¶ 8} Defendants-appellees responded. They represented that Dr. Steiman had authorized them to act as a conduit in filing the motion to quash on his behalf, and they pointed out that they had previously acted as such while negotiating with plaintiff's counsel toward a resolution to the dispute. They maintained that the subpoena was defective because it did not identify what records Dr. Steiman was to produce at deposition; it specified only what records to bring *in lieu of* appearing for deposition. They also claimed that even if the "in lieu of" language specified the documents requested, that section of the subpoena contains no "command" language as provided by Civ.R. 45(A)(1)(b)(iv). They again argued that Dr. Steiman's tax records would not be

4.

relevant. They insisted that the information Dr. Steiman provided to Mezatasta was more than adequate, and that the alternative proposed by Mezatasta was as burdensome as her original request for documents. Defendants-appellees contended that Mezatasta sought only to harass Dr. Steiman and to deter him from performing IMEs.

{¶ 9} In an order dated May 12, 2015, the trial court denied the motion to quash, finding that defendants-appellees lacked standing to move to quash a subpoena served on a third party. On May 21, 2015, Mezatasta filed a motion for contempt of court by Dr. Steiman.

{¶ 10} At this point, Dr. Steiman engaged his own counsel who filed a memorandum in opposition to the motion for sanctions, and an accompanying motion to quash the subpoena and for a protective order. He urged that the issuance of the subpoena was an abuse of the discovery process designed to inquire unnecessarily into the confidential affairs of a non-party witness, and that the records requested would reveal every aspect of Dr. Steiman and his wife's financial situation. He also argued that Mezatasta was not entitled to an award of sanctions because she failed to seek a court order to compel production of documents following receipt of Dr. Steiman's objections to the subpoena. He again insisted that the information he voluntarily provided to Mezatsasta concerning the number of IMEs he performed and amount earned from those IMEs sufficed to provide Mezatasta with information needed to cross-examine him on the issue of bias. Dr. Steiman cited case law where courts had specifically refused to compel production of an expert witness' tax returns. *Taylor v. Frasure,* Franklin C.P.

5.

No.09CVC01-622 (Jan. 4, 2010); *Stinchcomb v. Mammone,* 166 Ohio App.3d 45, 2004-Ohio-1276, 849 N.E.2d 54 (5th Dist.).

{¶ 11} In an order journalized on June 4, 2015, the trial court denied the motion for sanctions, but it also denied Dr. Steiman's motion for protective order.

{¶ 12} In light of the court's ruling, Dr. Steiman terminated his engagement with defendants-appellees to avoid producing his financial documents. He filed a Civ.R. 60(B) motion for relief from judgment, requesting that the court vacate the previous order. He argued (1) that Mezatasta failed to show a substantial need for the tax returns; (2) that because he terminated his engagement with defendants-appellees, it would be unjust to invade his private financial affairs, and (3) his motion was timely-filed. The trial court denied Dr. Steiman's motion in an order journalized on June 26, 2015.

{¶ 13} Dr. Steiman timely-appealed both the June 4, 2015, and June 24, 2015 judgments. He assigns the following errors for our review:

> First Assignment Of Error: A Trial Court Abuses Its Discretion By Denying A Third Party's Motion To Quash When The Requesting Party Did Not Show A Substantial Need For The Materials Sought Under The Subpoena Or The Request Is Designed To Intimidate A Witness.

> Second Assignment Of Error: A Trial Court Abuses Its Discretion By Denying A Third Party's Rule 60(B) Motion When The Motion Was Timely, Demonstrated A Meritorious Defense And Set Forth Grounds For Relief Under Civ.R. 60(B).

## II. LAW AND ANALYSIS

{¶ 14} In this appeal, Dr. Steiman argues that the trial court abused its discretion in denying his motion to quash because (1) Mezatasta did not show a substantial need for the records, (2) there was no evidence that his tax records were relevant, (3) Mezatasta had sufficient evidence to cross-examine him as to bias, and (4) the real purpose of the subpoena was to intimidate him. He argues that the trial court also abused its discretion in denying his Civ.R. 60(B) motion because the motion demonstrated a meritorious defense given that Dr. Steiman no longer planned to testify, it set forth circumstances justifying relief from judgment, and it was filed within a week of his withdrawing from the case, and was, therefore, timely. Dr. Steiman also claims that it was error for the trial court to fail to hold a hearing on his Civ.R. 60(B) motion.

{¶ 15} Before addressing the merits of Dr. Steiman's appeal, we must determine whether the June 4, 2015 judgment is a final appealable order. Mezatasta argues that it is not. She claims that because Dr. Steiman is not a party to the litigation, is not integral to the litigation, and, in fact, terminated his engagement to testify, the trial court's June 4, 2015 judgment is not final and appealable.

{¶ 16} Generally speaking, discovery orders, including orders denying a motion to quash a subpoena duces tecum, are interlocutory and are not immediately appealable. *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 166 Ohio App.3d 118, 2006-Ohio-1347, 849 N.E.2d 297, ¶ 7 (10th Dist.); *Munro v. Dargai,* 8th Dist. Cuyahoga No. 54622,

7.

1988 WL 36594, *1 (Mar. 31, 1988). R.C. 2505.02(B) provides an exception to this general rule, however. It provides, in pertinent part, as follows:

An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

* * *

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

Under R.C. 2505.02(A)(3), a "provisional remedy" is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence * * *."

{¶ 17} A number of Ohio courts have concluded that an order compelling discovery of privileged, potentially-protected information constitutes a final, appealable order. *Dispatch Printing Co.* at ¶ 8. Some even go so far as holding that any "order overruling a motion to quash a subpoena duces tecum issued to a *non-party* * * * is appealable since the party has no recourse other than to appeal from the order overruling

8.

the motion to quash," without regard to whether the subpoena seeks privileged or otherwise protected documents. *Munro* at *1. *See also Foor v. Huntington Nat. Bank*, 27 Ohio App.3d 76, 77, 499 N.E.2d 1297 (10th Dist.1986); *Tisco Trading USA, Inc. v. Cleveland Metal Exch., Ltd.,* 8th Dist. Cuyahoga No. 97114, 2012-Ohio-493, ¶ 5; *Scott Process Sys., Inc. v. Mitchell*, 5th Dist. Stark No. 2012CA00021, 2012-Ohio-5971, ¶ 23-24. These cases make no distinction based on whether the non-party is "integral" to the action, as argued by Mezatasta.

{¶ 18} We decline to adopt a blanket rule that in every instance, there is an immediate right to an appeal of an order denying a motion to quash a subpoena duces tecum issued to a non-party. Having said this, the documents at issue here are tax returns. While tax returns are not, in a strict sense, "privileged," the Ohio Supreme Court has recognized that "tax returns reflect intimate, private details of an individual's life," and citizens have an expectation of privacy with respect to their tax returns. *State ex rel. Fisher v. Cleveland,* 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500, ¶ 27, 32. As such, we conclude that discovery seeking production of a non-party's tax returns is a "provisional remedy," and the trial court order at issue here "in effect determines the action with respect to the provisional remedy." Moreover, once Dr. Steiman produces his tax returns, he will have no meaningful or effective remedy following final judgment of the action. Accordingly, we find that the June 4, 2015 judgment is a final, appealable order.

9.

{¶ 19} Having concluded that the June 4, 2015 is a final, appealable order, we turn to the merits of this appeal.

## A. The June 4, 2015 Judgment

{¶ 20} In his first assignment of error, Dr. Steiman claims that the trial court abused its discretion by denying his motion to quash because Mezatasta did not show a substantial need for the materials sought and the request was designed merely to intimidate him. He claims that there was no showing that his tax documents were relevant, he provided sufficient information on which he could be cross-examined as to bias, and he warns that requiring medical providers to produce their personal financial records will shrink the number of providers who are willing to offer their services to injured parties and to serve as experts in litigation.[2]

{¶ 21} Mezatasta responds that Dr. Steiman failed to timely object to the subpoena. She states that the subpoena was served on March 26, 2015, Civ.R. 45(C)(2)(b) permits the subpoenaed party to serve written objections within 14 days after service, and Dr. Steiman failed to object until April 20, 2015. She contends that the subpoenaed documents were limited in scope and time as "compared to other subpoenas served on Appellant and other forensic medical examiners." While generally discussing the fact that bias and pecuniary interest are permissible areas of inquiry on cross-

---

[2] The Ohio Association of Civil Trial Attorneys ("OACTA") filed a brief of amicus curiae in support of Dr. Steiman's position. OACTA argues that requiring expert witnesses to disclose personal tax returns is overly-intrusive and will serve to increase litigation expenses and reduce a party's ability to retain well-qualified experts. It also argues that the tax returns of an expert are confidential and irrelevant.

10.

examination, she fails to articulate how the documents requested in the subpoena would assist in that inquiry, and focuses mainly on how her proposed compromise to Dr. Steiman's objections further that purpose.

**{¶ 22}** It is well-established that trial courts have broad discretion over discovery matters. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. Generally, absent an abuse of discretion, we will not overturn a trial court's decision to enforce a subpoena. *Block Communications v. Pounds,* 34 N.E.3d 984, 2015-Ohio-2679, ¶ 33. (6th Dist.). "Abuse of discretion" implies that the trial court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 23}** The trial court denied Dr. Steiman's second motion to quash because it found that it did not "place any undue burden on Dr. Steiman." It seemingly failed, however, to consider Dr. Steiman's contention that his personal income tax returns are not relevant, are confidential, and are not subject to discovery. Dr. Steiman cites *Stinchcomb v. Mammone,* 166 Ohio App.3d 45, 2004-Ohio-1276, 849 N.E.2d 54, in support of his position.

**{¶ 24}** In *Stinchcomb,* plaintiff issued a subpoena duces tecum to the doctor hired by the defense to perform an IME. The subpoena required the doctor to produce the number of IMEs he performed at the request of any defense law firm or insurance company for a four-year period, the amount of money he or his office earned in

11.

performing IMEs during that period, and copies of all tax form 1099's he or his business received from any defense law firm or insurance company showing payments made to him for that period. *Id.* at ¶ 10-12. The doctor and his practice retained counsel and objected to the production of the documents. *Id.* at ¶ 13-14. Plaintiff filed a motion to compel compliance with the subpoena, indicating that the documents were relevant to demonstrate the doctor's possible bias or pecuniary interest. *Id.* at ¶ 15. The trial court denied the motion, finding that the doctor had "provided more than sufficient information and Plaintiffs are not entitled to the privileged information sought in the subpoena." *Id.* at ¶ 18. The Fifth District affirmed the trial court's decision.

{¶ 25} Here, the tax records requested in Mezatasta's subpoena actually went well beyond what was requested by the plaintiff in *Stinchcomb*. In *Stinchcomb,* the plaintiff requested 1099s from defense firms and insurance companies. Mezatasta requested *all* of Dr. Steiman's 1099s *and* income tax returns for a five-year period. As Dr. Steiman points out, these documents would reflect income from all sources and would include his wife's financial information as well. He also maintains that he performed IMEs as an employee of Steiman Neurology Group—thus his personal tax returns and 1099s would not distinguish what amount of his income is attributable to the IMEs he performs. So while we agree with the trial court that Mezatasta's request did not place an undue burden

12.

on Dr. Steiman, we question the trial court's failure to consider the relevance of the documents and Mezatasta's need for them.[3]

{¶ 26} Having said this, Civ.R. 45(C)(2)(b) provides a mechanism for a non-party to challenge a subpoena:

> [A] person commanded to produce under divisions (A)(1)(b), (iii), (iv), (v), or (vi) of this rule may, *within fourteen days after service* of the subpoena or before the time specified for compliance if such time is less than fourteen days after service, serve upon the party or attorney designated in the subpoena written objections to production.  If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, may move at any time for an order to compel the production. * * *  (Emphasis added.)

{¶ 27} Thus, where a party makes written objection within 14 days of receiving the subpoena, it is incumbent on the issuing party to seek a court order compelling production.  The rule also provides a mechanism by which the subpoenaed non-party can seek court intervention:

---

[3] The Franklin County Court of Common Pleas addressed a similar issue in *Taylor v. Frasure,* Franklin C.P. No. 09CVC01-622 (Jan. 4, 2010), another case in which Dr. Steiman performed an IME and medical records review at defense counsel's request.  The court held that "[t]o the extent that the plaintiff is seeking tax related documents showing all income received by Dr. Steiman since 2006, the Court finds that this documentation is not relevant."  *Id.* at 2.

13.

(3) On *timely* motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production only under specified conditions, if the subpoena does any of the following:

* * *

(b) Requires disclosure of privileged or otherwise protected matter and no exception or waiver applies;

* * *

(d) Subjects a person to undue burden.  (Emphasis added.)

{¶ 28} But before seeking court intervention, Civ.R. 45(C)(4) requires both that the "person resisting discovery * * * attempt to resolve any claim of undue burden through discussions with the issuing attorney[,]" and that a motion filed under Civ.R. 45(C)(3)(d) "be supported by an affidavit of the subpoenaed person or a certificate of that person's attorney of the efforts made to resolve any claim of undue burden."

{¶ 29} Dr. Steiman followed none of these procedural rules.  His written objections to the subpoena were provided more than a week late; the motion permitted by Civ.R. 45(C)(3) was filed by a party without standing to file on his behalf and was not filed within 14 days of the issuance of the subpoena; and the original motion to quash was not accompanied by the required affidavit or certification of the efforts to resolve Dr. Steiman's claim of undue burden.  *See Trick v. Scherker,* 2d Dist. Montgomery No. 26461, 2015-Ohio-2972, ¶ 12, 16 (refusing to strictly enforce the provisions of Civ.R. 45 against issuing party where recipient, plaintiff's treating physician, failed to adhere to 14-

14.

day objection period); *McDade v. Morris,* 9th Dist. Summit No. 27454, 2015-Ohio-4670, ¶ 10 (finding that failure to comply with affidavit or certification provision of Civ.R. 45(C)(4) warranted denial of motion to quash); *Jones v. Records Deposition Serv. of Ohio, Inc.,* 6th Dist. Lucas No. L-01-1333, 2002-Ohio-2269, ¶ 13 (recognizing that only the person subpoenaed has standing to file a motion to quash subpoena).

{¶ 30} Because of Dr. Steiman's failure to abide by the procedures set forth in Civ.R. 45(C), we find his first assignment of error not well-taken.

## B. The Denial of the Civ.R. 60(B) Motion

{¶ 31} In his second assignment of error, Dr. Steiman contends that the trial court abused its discretion in denying his Civ.R. 60(B) motion filed on June 12, 2015. He argues that because he withdrew as a witness, there were new and changed circumstances entitling him to relief from the June 4, 2015 judgment. He contends that where an expert witness withdraws from a case, he should have no obligation to produce his personal information because he will not be cross-examined. He relies on Civ.R. 60(B)(5) as the basis for his motion. Dr. Steiman also submits that he was entitled to a hearing on his motion.

{¶ 32} Mezatasta counters that because Dr. Steiman was in contempt of court by the time his counsel filed a motion to quash on his behalf, he is not entitled to relief from judgment. She fails to address the fact that Dr. Steiman withdrew as a witness and will, therefore, not be subject to cross-examination—a significant change in circumstances from those that existed at the time the court issued its June 4, 2015 judgment.

15.

**{¶ 33}** Civ.R. 60(B) provides that:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud * * *, misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

**{¶ 34}** In *GTE Automatic Elec., Inc. v. ARC Indus., Inc.,* 47 Ohio St.2d 146, 150-51, 351 N.E.2d 113 (1976), the Supreme Court of Ohio elaborated on what must be established to prevail on a motion filed under Civ.R. 60(B):

To prevail on [a] motion under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds

stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

**{¶ 35}** Certainly, Dr. Steiman's Civ.R. 60(B) motion was timely, filed just days after judgment was entered. Thus, our focus is on the first and second *GTE* elements.

**{¶ 36}** Civ.R. 60(B)(5) is a "catchall provision which reflects the inherent power of a court to relieve a person from the unjust operation of a judgment." *Volodkevich v. Volodkevich*, 35 Ohio St.3d 152, 154, 518 N.E.2d 1208 (1988). It cannot be used as a substitute for one of the more specific provisions of Civ.R. 60(B). *Guardian Alarm Co. v. Mahmoud*, 166 Ohio App.3d 51, 2006-Ohio-1227, 849 N.E.2d 58, ¶ 13 (6th Dist.), citing *Caruso–Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365, paragraph two of the syllabus. A moving party must have substantial grounds for invoking Civ.R. 60(B)(5). *Id.*

**{¶ 37}** "Civ.R. 60(B) is a remedial rule to be liberally construed with a view toward effecting a just result." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (1988). Generally, an appellate court will not reverse a trial court's decision on a motion for relief from judgment absent an abuse of discretion. *Birr v. Birr*, 2012-Ohio-187, 969 N.E.2d 312, ¶ 26 (6th Dist.). Here, however, the trial court failed to provide any rationale for denying Dr. Steiman's motion, and we find that Dr. Steiman's withdrawal from the case constitutes substantial grounds for invoking Civ.R. 60(B)(5).

17.

As discussed earlier in this decision, the tax records that Dr. Steiman was ordered to produce would reflect income from all sources, would include his wife's financial information, and would not differentiate as to what portions of his income are attributable to the IMEs he performs. As the documents were of questionable relevance when Dr. Steiman was set to testify as a defense witness, they are of absolutely no relevance now that he has withdrawn from the case. Under these circumstances, the trial court abused its discretion in denying Dr. Steiman's Civ.R. 60(B) motion.

{¶ 38} We, therefore, find Dr. Steiman's second assignment of error well-taken.

### III. CONCLUSION

{¶ 39} We find Dr. Steiman's first assignment of error not well-taken and affirm the June 4, 2015 judgment of the Erie County Court of Common Pleas; however, we find his second assignment of error well-taken, and reverse its June 24, 2015 judgment. We remand this matter to the trial court for further proceedings consistent with this decision. The costs of this appeal are assessed to Mezatasta pursuant to App.R. 24.

Judgment affirmed, in part
and reversed, in part.

18.

E-15-037
Mezatasta v. Enterprise Hill Farm, et al.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.

Stephen A. Yarbrough, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE


_____
JUDGE


_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.