[Cite as *TD Ltd., L.L.C. v. Dudley*, 2014-Ohio-3996.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| TD LIMITED LLC, et al., | : | CASE NO. CA2014-01-009 |
| Plaintiffs-Appellees, | : | |
| | : | O P I N I O N<br>9/15/2014 |
| - vs - | : | |
| | : | |
| TERRY M. DUDLEY, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-09-3243

Holcomb & Hyde, LLC, John M. Holcomb and Richard A. Hyde, 6 South Second Street, Suite 311, Hamilton, Ohio 45011, for plaintiffs TD Limited, LLC and David T. Davidson, Trustee

Porter, Wright, Morris & Arthur, Scott E. North, 41 South High Street, 30th Floor, Columbus, Ohio 43215, for plaintiff, Thomas Dudley

Arnoff, Rosen & Hunt, Edward P. Akin, 2200 U.S. Bank Tower, 425 Walnut Street, Cincinnati, Ohio 45202, for appellants, Terry M. Dudley and Katherine S. Dudley

Ricketts Co., LPA, Richard T. Ricketts, 50 Hill Road South, Pickerington, Ohio 43147, for appellee, Bath State Bank

**S. POWELL, J.**

{¶ 1} Defendants-appellants, Terry M. Dudley and Katherine S. Dudley, appeal from the decision of the Butler County Court of Common Pleas appointing a receiver for the limited purpose of selling residential real property owned by plaintiff, TD Limited, LLC, upon motion

from intervening-plaintiff/appellee, Bath State Bank. For the reasons outlined below, we affirm.

{¶ 2} Terry and Thomas Dudley are brothers who have been involved in protracted litigation for a number of years regarding the dissolution of their equally co-owned business, TD Limited, a company that owns 21 residential properties that it rents primarily to college students at Miami University located in Oxford, Butler County, Ohio. *See generally Dudley v. Dudley*, 12th Dist. Butler No. CA2012-04-074, 2013-Ohio-859.

{¶ 3} As relevant here, Terry and Thomas had a disagreement that eventually led to legal action being filed in 2006, with each brother requesting a judicial dissolution of TD Limited. The trial court subsequently appointed a receiver to oversee the dissolution of the company on July 8, 2008. After the receiver was appointed, on July 1, 2010, Bath State Bank (BSB) entered into a promissory note with the appointed receiver in the amount of $460,000, plus interest. It is undisputed that the appointed receiver signed the note on behalf of TD Limited with the approval of the trial court.

{¶ 4} On May 3, 2011, Terry and Thomas entered into a settlement agreement to sell the 21 rental properties owned by TD Limited at private auction. As part of this settlement agreement, the brothers agreed that a private auction would be conducted within 45 days of the signing of the agreement. They also agreed that closing for all of the properties sold at the private auction would occur within 45 days thereafter, and that, if either brother makes a winning bid but fails to close on the property, "the other brother may purchase the subject property for their last bid price." Terry and Thomas also agreed that if any of the 21 properties failed to sell at private auction, the unsold properties, if any, "shall be sold at a public auction, which shall occur no later than 45 days after the private auction." After this settlement agreement was reached, the trial court terminated the receivership and the case was dismissed.

- 2 -

{¶ 5} On August 11, 2011, a private auction was conducted, wherein Terry and his wife Katherine (hereinafter, Terry and Kathy) agreed to purchase 14 of the properties, with Thomas agreeing to purchase the remaining seven properties. Pursuant to the settlement agreement, TD Limited collected down-payments from Terry and Thomas comprising 10% of the aggregate purchase price for their respective bids. The closing, however, never went forward and no public auction was ever conducted pursuant to the terms of the settlement agreement.

{¶ 6} On September 6, 2012, over a year after the private auction occurred, TD Limited, through its trustee, David T. Davidson, filed suit against Terry and Kathy alleging claims of replevin, conversion, and tortious interference with contractual relations, among others. The suit stemmed from allegations that Terry and Kathy had "exerted control" over the 14 properties they successfully bid on at the private auction, but which were still owned by TD Limited. TD Limited also alleged the couple:

> entered into new contractual leases, collected security deposit and lease payments, and entered into other transactions regarding properties that are owned by [TD Limited], without title to those properties, and without [TD Limited's] authority to do so.

Terry and Kathy subsequently filed an answer and counterclaim against TD Limited on October 23, 2012.

{¶ 7} One month later, on November 29, 2012, Terry and Kathy filed a motion with the trial court to enforce the settlement agreement, essentially asking the trial court to set a date for closing on the properties previously bid on at the August 11, 2011 private auction. However, before the trial court could hold a hearing on the matter, BSB filed a motion to intervene as plaintiff on January 7, 2013, which the trial court granted on January 14, 2013. Terry and Kathy then amended their counterclaim levied against TD Limited to include Thomas as an additional, albeit involuntary, plaintiff.

{¶ 8} Several months later, on April 1, 2013, Terry and Kathy filed a motion requesting the trial court hold a hearing on their motion to enforce the settlement agreement. BSB also requested the trial court to hold a hearing to address all pending matters. As part of that motion, BSB stated, in pertinent part, the following:

> While BSB does not take a substantive position as to Terry or Tom's disputes in respect of the terms of the Settlement Agreement as between them, it does seek to have the Court compel the parties to complete at least that portion of the Settlement Agreement as necessary to provide for payment to BSB in an amount necessary to satisfy the Loan (and bona fide third party creditors). Furthermore, if that objective cannot be accomplished BSB seeks the establishment of a case management order that will facilitate either the appointment of a receiver to liquidate the remaining properties; or an entry requiring that the remaining properties be re-auctioned so that these matters can be fully concluded.

When the trial court failed to schedule a hearing, Terry and Kathy filed a renewed motion to enforce the settlement agreement on May 10, 2013. The trial court then scheduled a hearing on all pending matters for June 6, 2013.

{¶ 9} Following the June 6, 2013 hearing, the trial court entered an order on June 17, 2013 requiring Terry and Thomas "to close in accordance with the terms of their completed private auction, on or before June 26, 2013." The trial court later rescheduled the closing to occur on July 17, 2013 due to scheduling conflict. The closing was again rescheduled for August 9, 2013 after the parties experienced unanticipated delays in securing closing statements. Yet, despite the trial court's willingness to reschedule, still no closing occurred by the August 9, 2013 deadline as instructed by the trial court.

{¶ 10} On August 12, 2013, Thomas filed his own motion to enforce the settlement agreement. Approximately one month later, on September 17, 2013, Terry and Kathy filed another motion to enforce the settlement agreement. On October 9, 2013, after holding yet another hearing on the matter, the trial court entered the following order:

> The Court finds that Tom and Terry Dudley failed to close on the subject properties.  Pursuant to paragraph 6 of the settlement agreement the other brother may purchase the subject properties for their last bid price.  The Court is ordering that if either party chooses to exercise their option under paragraph 6 the closing is to take place no later than 14 days from the date of the filing of this order.  If any property fails to close by that date the Court is ordering a public auction pursuant to paragraph eleven of the settlement agreement.  The public auction shall occur no later than December 9, 2013.

Again, no closing occurred by the trial court's imposed deadline.

{¶ 11} On October 28, 2013, Terry and Kathy filed a motion to compel specific performance.  In support of this motion, Terry and Kathy claimed they obtained financing and were ready and willing to close on all 21 properties in accordance with the trial court's imposed deadline, but that Thomas failed to appear at closing.  Thomas, however, alleged the closing set up by Terry and Kathy was a farce and that he was only provided with a few hours' notice before the closing was to occur.  Specifically, Thomas claimed Terry "staged a 'closing' where he brought the insufficient funds and proclaimed that he was ready to close.  No one fell for it."  A hearing on the matter was then scheduled for November 5, 2013.

{¶ 12} Following this hearing, on November 21, 2013, the trial court issued an order granting Terry and Kathy's motion to compel specific performance.[1]  As part of that decision, the trial court ordered the closing to be held by the end of business on November 15, 2013.  In the interim, however, seemingly frustrated with Terry and Thomas' apparent inability to close on the properties as instructed, BSB filed a motion with the trial court requesting the appointment of a receiver as provided by R.C. 2735.01(A) and (F), thereby once again postponing the scheduled closing.  The trial court held a hearing on BSB's motion to appoint

---

1. Thomas appealed both the trial court's October 9, 2013 and November 21, 2013 orders.  He later filed a motion to voluntarily dismiss both appeals on January 27, 2014, which this court granted on February 19, 2014.  *See TD Limited, LLC v. Dudley*, 12th Dist. Butler Nos. CA2013-11-203 and CA2013-11-215 (Feb. 19, 2014) (Judgment Entry of Dismissal).

a receiver on December 2, 2013.

{¶ 13} Approximately one week later, on December 12, 2013, the trial court issued an order granting BSB's motion to appoint a receiver pursuant to R.C. 2735.01(A). Pursuant to that statute, the trial court may appoint a receiver:

> In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured.

In so holding, the trial court stated, in pertinent part, the following:

> After careful consideration of all of these factors, the testimony and evidence presented at the hearing, and arguments of counsel the court finds by clear and convincing evidence that the appointment of a receiver is necessary for the preservation of Bath State Bank's rights. Terry and Kathy Dudley and Thomas Dudley were involved in prior litigation – Butler County Common Pleas Court Case No. CV06 12 4689. A receiver was appointed by the court in that case. On July 1, 2010, Bath State Bank entered into a promissory note, in the amount of $460,000.00, with that Receiver, who signed on behalf of TD Limited. By entry filed May 6, 2011 the court terminated the receiver and ruled that any action or indebtedness associated with the promissory note was the sole responsibility of TD Limited. TD Limited assets mainly consist of real estate. By agreement dated May 3, 2011 this real estate was to be sold at private auction no later than 45-days after the signing of the agreement and if any property failed to sell it was to be sold at a public auction which was to occur no later than 45-days after the private auction. Despite numerous attempts at settlements, a new lawsuit, and several court hearings and orders the real estate has not been sold and the Bath State Bank remains unpaid.
>
> Accordingly, the Court hereby grants Bath State Bank's motion to appoint a receiver for the limited purpose of auctioning off the properties owned by TD Limited, LLC and facilitating the closings on the sale of those properties. The Court recognizes that this is an extraordinary remedy; however, given the facts and circumstances of this case it is necessary.

The trial court then vacated its October 9, 2013 and November 21, 2013 orders as moot.

{¶ 14} On January 10, 2014, the trial court issued an order appointing a receiver for the limited purpose of marketing and conducting a public auction of the 21 disputed properties owned by TD Limited. That same day, Terry and Kathy filed a notice of appeal from the trial court's decision to appoint a receiver. Thereafter, on January 22, 2014, Terry and Kathy filed a motion with the trial court requesting a stay pending appeal. The trial court denied the motion. In so holding, the trial court stated, in pertinent part, the following:

> The purpose of this litigation is to enforce the agreement to sell the properties. It is clear to the Court that parties cannot and will not agree on closing terms. Thus, the court is left with the extraordinary remedy of appointing a receiver to sell the properties.

{¶ 15} This court later granted Terry and Kathy's motion to stay pending appeal contingent upon them posting a supersedes bond with the trial court in the amount of $1.2 million. *TD Limited, LLC v. Dudley*, 12th Dist. Butler No. CA2014-01-009 (Mar. 11, 2014) (Entry Granting Motion for Stay Pending Appeal Contingent Upon Posting Supersedeas Bond in the Amount of $1.2 Million). There is no indication in the record that a bond was ever posted.

{¶ 16} Terry and Kathy now appeal from the trial court's decision to appoint a receiver, raising four assignments of error for review.[2] For ease of discussion, Terry and Kathy's first,

---

2. We note that BSB has filed a motion to dismiss in this matter alleging Terry and Kathy lacked standing to appeal the trial court's decision appointing a receiver. However, while we may agree they lacked standing to challenge the appointment of a receiver as members of TD Limited, *see Sobh v. American Family Ins. Co.*, 755 F.Supp.2d 852, 856 (N.D.Ohio 2010) (applying Ohio law finding sole member of LLC lacked standing to bring breach of contract action in his individual capacity on behalf of the company); *see also Johnson v. Booth*, 343 Mont. 268, 2008 MT 155 (sole member of two LLCs lacked standing to challenge appointment of receiver as "any injury or adverse effect resulting from this order would impact these two entities, not Booth"); *Barrera v. Cherer*, Tex.App.No. 04-13-00612-CV, 2014 WL 1713522, *2 (Apr. 30, 2014) (expressly stating that "[a] member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company"); *Turner v. Andrew*, 413 S.W.3d 272, 276-277 (Ky.2013) (finding member of limited liability company lacked standing to bring action for lost business income to the company as the only proper party to bring suit for lost business income was the LLC); *Wasko v. Farley*, 947 A.2d 978 (Conn.App.2008) (recognizing that a LLC is distinct from its members and claims on behalf of the company cannot be asserted by an individual member), we nevertheless find Terry and Kathy do have standing to challenge the trial court's decision appointing a receiver as the winning bidders on 14 of the disputed properties at the private auction conducted on August 11, 2011. BSB's motion to dismiss this appeal is therefore overruled.

second and third assignments of error will be addressed together.

{¶ 17} Assignment of Error No. 1:

{¶ 18} MOVANT BATH STATE BANK HAS NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT IT IS ENTITLED TO APPOINTMENT OF A RECEIVER UNDER O.R.C. §2735.01.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED BY AUTHORIZING THE RECEIVER TO CONDUCT A PUBLIC AUCTION OF PROPERTIES ALREADY SOLD AT PRIVATE AUCTION, FOR WHICH THE SELLER COLLECTED AND SPENT DOWN PAYMENTS.

{¶ 21} Assignment of Error No. 3:

{¶ 22} THE TRIAL COURT ERRED BY AUTHORIZING THE RECEIVER TO CONDUCT A PUBLIC AUCTION IN DEROGATION OF PROVISIONS IN A VALID SETTLEMENT AGREEMENT.

{¶ 23} In their first three assignments of error, Terry and Kathy argue the trial court erred and abused its discretion by appointing a receiver in this matter. We disagree.

{¶ 24} A trial court has the authority to appoint receivers pursuant to R.C. 2735.01. *Fifth Third Bank v. Q.W.V. Properties, L.L.C.*, 12th Dist. Butler No. CA2010-09-245, 2011-Ohio-4341, ¶ 17. Pursuant to that statute, a receiver may be appointed by the court of common pleas or a judge thereof in his or her county, in the following cases:

> (A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;
>
> (B) In an action by a mortgagee, for the foreclosure of his mortgage and sale of the mortgaged property, when it appears

- 8 -

that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt;

(C)  After judgment, to carry the judgment into effect;

(D)  After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;

(E)  When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;

(F)  In all other cases in which receivers have been appointed by the usages of equity.

**{¶ 25}** The authority to appoint a receiver is "an extraordinary, drastic and sometimes harsh power which equity possesses." *Crawford v. Hawes*, 2d Dist. Montgomery No. 23209, 2010-Ohio-952, ¶ 33, quoting *Hoiles v. Watkins*, 117 Ohio St. 165, 174 (1927). Nevertheless, the decision to appoint a receiver is within the trial court's sound discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73 (1991). In turn, we review a trial court's decision regarding the appointment of a receiver for an abuse of that discretion. *Harold Pollock Co., L.P.A. v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 15. An abuse of discretion is more than an error of law; rather, it suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Park Natl. Bank v. Cattani*, 187 Ohio App.3d 186, 2010-Ohio-1291, ¶ 14 (12th Dist.).

**{¶ 26}** In this case, the trial court appointed a receiver pursuant to R.C. 2735.01(A) after finding it "necessary to preserve Bath State Bank's rights." That provision, however, applies only "when it is shown that the property or fund is in danger of being lost, removed, or materially injured." The trial court made no findings in regards to this additional requirement, and our review of the record has not uncovered any evidence that would support such a

determination. Rather, the record reveals that a majority of the subject properties are currently being maintained and rented out to Miami University students.

{¶ 27} However, while we may take issue with the trial court's decision to appoint a receiver pursuant to R.C. 2735.01(A), it is well established that "a trial court may be right for the wrong reasons without resulting in reversible error." *Greenacres Found. v. Zoning Bd. of Bldg. Appeals*, 1st Dist. Hamilton No. C-120131, 2012-Ohio-4784, ¶ 15; *State ex rel. McGinty v. Cleveland City School Dist. Bd. of Ed.*, 81 Ohio St.3d 283, 290 (1998) (stating a "reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof"). Such is the case here as we find the appointment of a receiver was justified under the so-called "catch-all" provision found in R.C. 2735.01(F).

{¶ 28} As noted above, pursuant to R.C. 2735.01(F), the trial court had the authority to appoint a receiver "by the usages of equity." As defined by Black's Law Dictionary, the term "equity" means "fairness," "impartiality," and "evenhanded dealing." The term is also defined as "[t]he body of principles constituting what is fair and right; natural law." Similarly, the term "equitable" is defined by Black's Law Dictionary as "conformable to principles of justice and right."

{¶ 29} Here, the trial court ordered the parties to close on the properties multiple times. The trial court even went so far as to provide each party with detailed instructions on when and where the closing was to occur. Nevertheless, the parties refused to put their differences aside and close on the disputed properties as instructed. The parties are quick to point the finger and provide this court with a variety of excuses for this failure. We decline to join in this game. Suffice it to say, none of the parties are able to completely wash their hands clean from blame.

{¶ 30} As the trial court stated, and with which we agree, it is clear that the parties cannot and will not agree on closing terms, thereby leaving it with no other choice than "the

extraordinary remedy of appointing a receiver to sell the properties." In reaching this decision, we find the trial court properly exercised its discretion by taking "into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 65 (10th Dist.), quoting *Gibbs*, 60 Ohio St.3d at 73.

{¶ 31} As the record indicates, these parties have been dragging their feet for years, thus placing BSB in an uncertain and unenviable position as creditor holding a note signed by TD Limited now valued at over half a million dollars.[3] BSB should not be forced to sit on the sidelines waiting to be paid due to the parties' apparent inability to adhere to their own settlement agreement and multiple court orders instructing them to close on the properties. Therefore, although the trial court premised its decision on R.C. 2735.01(A), we find no abuse of discretion in the trial court's decision to appoint a receiver in this matter as it was justified under the so-called "catch-all" provision found in R.C. 2735.01(F). Accordingly, after carefully considering all of the arguments raised herein, Terry and Kathy's first, second and third assignments of error are without merit and overruled.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE TRIAL COURT ERRED IN ORDERING THE RECEIVER'S SALE TO GO FORWARD DESPITE THE PENDING APPEAL.

{¶ 34} In their fourth assignment of error, Terry and Kathy argue the trial court erred by allowing the sale of the properties to go forward despite the fact that they filed their notice of appeal in this matter. However, pursuant to App.R. 12(A)(1)(a), this court has limited

---

3. We note that the record submitted in this case indicates the trial court has since entered a decision granting Bath State Bank a motion for summary judgment against TD Limited on the note in the amount of $508,188.05, plus interest.

authority and may only affirm, modify, or reverse the judgment or final order appealed. As the record clearly indicates, Terry and Kathy appealed from the trial court's decision to appoint a receiver on January 10, 2014. "It is well established that an order appointing or removing a receiver is a final, appealable order that affects a substantial right in a special proceeding." *Cunningham v. Ohio Police and Fire Pension Fund*, 175 Ohio App.3d 566, 2008-Ohio-218, ¶ 6 (8th Dist.2008). Therefore, any issues regarding the trial court's actions after their notice of appeal from the trial court's decision to appoint a receiver was filed are not properly before this court. Accordingly, Terry and Kathy's fourth assignment of error is overruled.

**{¶ 35}** Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.