EILEEN A. GALLAGHER, P.J.:
{¶ 1} In this accelerated appeal, plaintiffs-appellants Haber Polk Kabat, L.L.P. and Thompson Hine L.L.P. (collectively the "law firms") appeal an order of the Cuyahoga County Court of Common Pleas appointing a receiver in an action they filed against their former client, defendant-appellee The Condominiums at Stonebridge Owners' Association (the "Association"), to collect attorney fees due under a written contingency fee agreement. For the reasons that follow, we affirm the trial court's decision.
Factual Background and Procedural History
{¶ 2} In September 2011, the Association retained the law firms on a contingency basis "to represent [the Association] in any claim(s) and/or potential claim(s) against the developers, contractors, and architects, of Stonebridge Condominiums, as well as related adverse parties." Under the terms of the contingency fee agreement, the law firms were entitled to "a contingency fee of forty percent (40%) of [the Association's] gross recovery." "Gross recovery" was not defined in the contingency fee agreement.
{¶ 3} In accordance with the contingency fee agreement, the law firms filed suit on behalf of the Association against the K & D Group and other entities related to water infiltration issues at the Stonebridge Condominiums (the "K & D litigation"). In August 2014, the parties reached an agreement in principle to settle the K & D litigation and, in November 2014, a settlement agreement was executed. Under the terms of the settlement, the Association was to receive: (1) a cash payment of $12 million, (2) the transfer of 46 unencumbered condominium units, (3) the transfer of an adjacent parking lot with a minimum of 25 parking spaces and (4) the assignment of certain claims against third-party subcontractors. The Association paid the law firms 40% of the $12 million cash settlement-$4.8 million-and an additional $200,000 in fees from settlements of related actions against subcontractors.
*1176 {¶ 4} In December 2014, ownership of the 46 condominium units was transferred to the Association by general warranty deed.[1] Although there appears to be no dispute that the law firms were entitled to 40% of the entire settlement the Association received, i.e., both 40% of the cash received in the settlement and 40% of the noncash component of the settlement, there was no agreement between the Association and the law firms as to how to apply the contingency fee agreement to the noncash portion of the settlement.
{¶ 5} For more than a year, the parties engaged in discussions regarding the value of the law firm's 40% interest in the 46 condominium units or, alternatively, the terms upon which 40% of the 46 condominium units could be transferred to the law firms to satisfy the law firms' 40% interest in the noncash portion of the settlement under the contingency fee agreement. However, the parties were unable to resolve the issue.
{¶ 6} On March 31, 2016, the Association advised the law firms that it had retained a commercial real estate broker, had decided to sell the 46 condominium units at a public auction and would pay the law firms 40% of the auction proceeds.
{¶ 7} The following day, the law firms filed suit against the Association, asserting claims for breach of contract, fraud, unjust enrichment and an accounting. The law firms sought to recover compensatory damages, punitive damages, interest and attorney fees resulting from the Association's failure to pay them 40% of the value of the 46 condominium units due under the contingency fee agreement or "[i]n the alternative, ownership, without encumbrance or restriction of 40% of the 46 condominium units at issue." On April 4, 2016, the law firms filed a certificate of lis pendens with the Cuyahoga County fiscal officer.
{¶ 8} The Association filed an answer and counterclaims against the law firms and several partners of the law firms, attorneys Andrew Kabat, Richard Haber and Frank DeSantis (the "individual counterclaim defendants") (collectively the "attorneys").[2] The Association asserted (1) claims for declaratory judgment, to quash the certificate of lis pendens and to quiet title against the law firms, and (2) claims for breach of fiduciary duty and professional negligence against all of the attorneys. The Association alleged that the attorneys had breached their fiduciary obligations by (1) advising the Association that it was required to pay the law firms the cash equivalent of the value of the noncash portion of the settlement under the contingency fee agreement, (2) failing to advise the Association to seek separate counsel on the issue, and (3) acting to prevent the Association from selling the real property so that it could pay the law firms the sum owed under the contingency fee agreement. The law firms filed an answer to the counterclaims and the individual counterclaim defendants filed an answer, a cross-claim against the Association and a third-party complaint asserting a contribution claim against the Association's counsel, Thacker Robinson Zinz L.P.A. ("Thacker Robinson") and one of its partners, attorney Mark Wallach (incorporating by reference *1177 the law firms' complaint and first amended complaint).[3]
{¶ 9} On January 10, 2017, the law firms were granted leave to file an amended complaint. In their first amended complaint, the law firms (1) alleged that the Association had breached a fiduciary duty owed to the law firms by failing to preserve the value of the property and failing to pay the law firms 40% of the collected rent, (2) sought additional attorney fees relating to the transfer of the parking lot to the Association and (3) asserted a contribution claim against Thacker Robinson and Attorney Wallach.
{¶ 10} The Association filed a motion to strike the attorneys' breach of fiduciary duty claims pursuant to Civ.R. 12(F) and a motion for partial summary judgment on the attorneys' fraud claims. The attorneys filed a motion for partial summary judgment on the Association's counterclaims for breach of fiduciary duty and professional negligence, and Thacker Robinson and Attorney Wallach filed a motion to dismiss the attorneys' contribution claims.
{¶ 11} On February 21, 2017, the trial court, sua sponte, entered an order appointing a receiver pursuant to R.C. 2735.01(A)(7).[4] In its journal entry, the trial court indicated that "[t]he parties have [j]udicially admitted in their pleadings and agree that Plaintiff[s] are entitled to an undivided 40% of the value of the 46 condominium units * * * [and] the 25 parking lot spaces contained within the adjacent parking lot." It found that appointment of a receiver for the property was warranted under R.C. 2735.01(A)(7) based on the following findings:
This Court finds that the appointment of receiver is proper under the agreed and admitted facts and circumstances of this case as set forth in the pleadings; and that legal and equitable grounds dictate that the appointment of receiver of the real property as described above and any personal property attendant thereto is proper pursuant to O.R.C. 2735.01(A)(7). This court finds that the appointment of a receiver is proper and necessary in order to protect, preserve and maximize the value of the aforestated real and personal property attendant thereto.
{¶ 12} "[S]ubject to modification as the court deems proper in the interests of maintaining, protecting, preserving the value of, maximizing the value of, appraising the value of, and selling for best value the property and rents at issue," the receiver was authorized to do the following:
The appointed receiver may do any of the following in the interests of the real and personal property attendant thereto afore stated:
(1) Bring and defend actions in the receiver's own name as receiver;
(2) Take and keep possession of real or personal property;
(3) Collect rents and other obligations, and compromise demands;
(4) Enter into contracts, including, but not limited to contracts of sale, lease, or, so long as existing lien rights will not be impacted, contracts for construction and for the completion of construction work;
*1178 (5) Sell and make transfers of real or personal property;
(6) Execute deeds, leases, or other documents of conveyance of real or personal property;
(7) Open and maintain deposit accounts in the receiver's name;
(8) Obtain a neutral appraisal of all property as to the reasonable value;
(9) Generally do any other acts that the court authorizes.
The appointed receiver shall carry out his duties in [accordance] with ORC 2735.04 and Local Rule 26 * * *.
{¶ 13} The law firms appealed the order appointing a receiver, raising the following assignment of error for review:
The trial court abused its discretion by appointing a receiver pursuant to Ohio Revised Code § 2735.01(A)(7) where no party makes a motion or seeks the appointment of a receiver as a form of relief; where no evidence of any type is submitted, or considered by the court; where no evidentiary hearing is conducted by the court; and, where adequate remedies at law exist to protect the interests of the respective parties.
{¶ 14} The Association filed a motion to dismiss the law firms' appeal for lack of standing.[5]
Law and Analysis
Standing
{¶ 15} As a preliminary matter, we first consider whether the law firms have standing to appeal the trial court's appointment of a receiver.[6] Standing is a preliminary inquiry that must be resolved before a court may consider the merits of a claim. Kincaid v. Erie Ins. Co. , 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9. A right to appeal " 'lies only on behalf of a party aggrieved by the final order appealed from.' " Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals , 91 Ohio St.3d 174, 177, 743 N.E.2d 894 (2001), quoting Ohio Contract Carriers Assn. v. Pub. Util. Comm. , 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus. A party is "aggrieved"-and thus has standing to appeal-if the party (1) has a present interest in the subject matter of the litigation and (2) has been prejudiced by the judgment or order of the trial court. Id. ; Willoughby Hills v. C. C. Bar's Sahara, Inc. , 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992). The appealing party must have an "immediate and pecuniary" interest in the dispute. Ohio Contract Carriers Assn. at 161, 42 N.E.2d 758, quoting 2 American Jurisprudence , Section 150. A future, contingent or speculative interest will not confer standing to appeal. Id. ; Midwest Fireworks Mfg. Co. at 177, 743 N.E.2d 894. " 'Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant.' " State ex rel. Gabriel v. Youngstown , 75 Ohio St.3d 618, 619, 665 N.E.2d 209 (1996), quoting Ohio Contract Carriers Assn. at syllabus. The party seeking to appeal bears the burden of establishing standing.
*1179 Deutsche Bank Trust Co. v. Williams , 171 Ohio App.3d 230, 2007-Ohio-1838, 870 N.E.2d 232, ¶ 12 (8th Dist.), citing Jenkins v. Gallipolis , 128 Ohio App.3d 376, 381, 715 N.E.2d 196 (4th Dist.1998) ; HSBC Mtge. Servs. v. Watson , 3d Dist. Paulding No. 11-16-03, 2017-Ohio-680, 2017 WL 751292, ¶ 9.
{¶ 16} Appellee contends that the law firms lack standing to challenge the appointment of a receiver because they have no "ownership interest" or "substantive right" in the real property subject to the receivership and, therefore, have not been prejudiced by the trial court's appointment of a receiver. The law firms contend that they have standing to challenge the appointment of the receiver because (1) they have a charging lien against proceeds of the settlement, including the condominium units, pursuant to the contingency fee agreement, (2) they have filed a certificate of lis pendens,[7] (3) the Association has, at times, taken the position that, under the terms of the contingency fee agreement, the law firms are entitled to a 40% interest in the real property, rather than a cash payment, in satisfaction of their outstanding contingency fee, and (4) the attorneys seek 40% ownership of the condominium units and 40% of the rent collected by the Association "as an alternative remedy" if the court were to determine that the contingency fee "was not require[d] to be satisfied in cash."
{¶ 17} As established by the parties' admissions in the pleadings, the parties do not dispute that (1) the law firms and the Association had an enforceable contingency fee agreement, pursuant to which the law firms were entitled to 40% of the Association's gross recovery in the K & D litigation, and (2) the Association acquired the real property at issue as a result of the settlement the law firms obtained for the Association in the K & D litigation. Where, as here, an attorney secures an award of property on behalf of a client through a judgment or settlement, Ohio law recognizes an equitable right on the part of the attorney to enforce a lien against the property that is the subject of the award as security for payment for the services the attorney provided in securing the award:
"This right, though called a lien, rests * * * on the equity of an attorney to be paid his fees and disbursements out of the judgment which he has obtained, *1180 and is upheld on the theory that his service and skill produced the judgment, and in accordance with the principle which gives a mechanic a lien upon a valuable thing which, by his skill and labor, he has produced."
Cohen v. Goldberger , 109 Ohio St. 22, 27, 141 N.E. 656 (1923), quoting 2 Ruling Case Law , 1069.
{¶ 18} As this court further explained in Mancino v. Lakewood , 36 Ohio App.3d 219, 523 N.E.2d 332 (8th Dist.1987) :
There is no statute in Ohio which either permits an attorney's lien on a client's judgment, decree or award, or provides a remedy for enforcement of such lien. However, Ohio courts recognize an attorney's equitable right to enforce such a lien:
"The right of the attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment obtained by him, and is upheld on the theory that his services and skill created the fund. Although there is no provision in the Code creating or recognizing the right of an attorney to a lien as security for payment of compensation for his services, it is plain from a long line of decisions by the courts of this state that the right exists, and in proper cases the courts will lend their aid to_maintain and enforce it."
* * *
"A special or charging lien may be created by an express agreement on the part of the client that the attorney shall have a lien for his compensation on the amount recovered. While, before judgment, an attorney has no lien upon or interest in the cause of action, in the absence of statute, yet where the parties have contracted that the attorney shall receive a specified amount of the recovery, such agreement will operate as an equitable lien in favor of the attorney." 6 Ohio Jurisprudence 3d , Attorneys at Law, Sections 178 - 179, at 721-722 ; Section 183, at 725 (1978). See also Foor v. Huntington Natl. Bank , 27 Ohio App.3d 76, 499 N.E.2d 1297 (1986), paragraph two of the syllabus.
An attorney's lien is founded on the equitable principle that an attorney is entitled to be paid his or her fees out of the judgment rendered in the case. See Annotation, 23 A.L.R. 4th 336 (1983).
Mancino at 223-224, 523 N.E.2d 332 ; see also Cuyahoga Cty. Bd. of Commrs. v. Maloof Properties , 197 Ohio App.3d 712, 2012-Ohio-470, 968 N.E.2d 602, ¶ 13 (8th Dist.). (" 'An attorney of record who has obtained a judgment has a security interest therein, as security for his fees in the case and for proper payments made and liabilities incurred during the course of proceedings.' "), quoting 2 Restatement of Law 2d, Agency, Section 464(e) (1958).
{¶ 19} An attorney's equitable right to enforce a charging lien against property recovered for a client in a judgment or settlement applies both to monetary recoveries and recoveries involving real property. See Galloway v. Galloway , 2017-Ohio-87, 80 N.E.3d 1225, ¶ 25.
{¶ 20} Based upon their equitable interest in the real property that is the subject of the parties' dispute and the broad powers granted to the receiver with respect to that property, we find that the law firms have a sufficient stake in the appointment of a receiver to have standing to challenge the appointment of the receiver in this case. Cf. TD Ltd., L.L.C. v. Dudley, 12th Dist. Butler No. CA2014-01-009, 2014-Ohio-3996, 2014 WL 4534927, ¶ 16, fn. 2 (as winning bidders at private auction of 14 of 21 residential properties that were the subject of a dispute between *1181 the parties, appellants had standing to challenge the trial court's appointment of a receiver to conduct a public auction of the 21 disputed properties); In re $449 United States Currency , 1st Dist. Hamilton No. C-110176, 2012-Ohio-1701, 2012 WL 1366736, ¶ 24-30 (where the state sought forfeiture of a seized vehicle as proceeds of drug trafficking in civil forfeiture proceeding, drug trafficker had standing to challenge the forfeiture by virtue of his "equitable interest" in the vehicle even though he lacked legal ownership evidenced by a certificate of title at the time of the seizure).
Appointment of Receiver
{¶ 21} R.C. 2735.01 governs the appointment of a receiver. Pursuant to R.C. 2735.01(A), the court of common pleas or a judge thereof, in his or her county, may appoint a receiver in the following cases:
(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to the creditor's claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds of the property or fund, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;
(2) In an action by a mortgagee, for the foreclosure of the mortgagee's mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, materially injured, diminished in value, or squandered, or that the condition of the mortgage has not been performed, and either of the following applies:
(a) The property is probably insufficient to discharge the mortgage debt.
(b) The mortgagor has consented in writing to the appointment of a receiver.
(3) To enforce a contractual assignment of rents and leases;
(4) After judgment, to carry the judgment into effect;
(5) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;
(6) When a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited liability company, partnership, limited partnership, or other entity rights;
(7) In all other cases in which receivers have been appointed by the usages of equity.
{¶ 22} The appointment of a receiver is an extraordinary remedy. Telecom Acquisition Corp. I v. Lucic Ents. , 8th Dist. Cuyahoga No. 102067, 2015-Ohio-2703, 2015 WL 4043306, ¶ 8 ; see also Hoiles v. Watkins, 117 Ohio St. 165, 173, 157 N.E. 557 (1927). Because appointment of a receiver is "such an extraordinary remedy," the need for a receiver must be established by clear and convincing evidence. Sobin v. Lim , 2014-Ohio-4935, 21 N.E.3d 344, ¶ 14 (8th Dist.) ("The presentation of evidence to demonstrate that appointment is necessary is governed by a clear and convincing standard."), citing 2115-2121 Ontario_Bldg., L.L.C. v. Anter , 8th Dist. Cuyahoga No. 98627, 2013-Ohio-2995, 2013 WL 3581951, ¶ 14 ; see also Telecom Acquisition Corp. at ¶ 8.
*1182 {¶ 23} The decision whether to appoint a receiver is within the trial court's sound discretion. Sobin at ¶ 14 ; State ex rel. Celebrezze v. Gibbs , 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991). In exercising that discretion, the trial court must generally consider all the circumstances and facts of the case, the conditions and grounds justifying relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter of the dispute and the adequacy and effectiveness of other remedies. Telecom Acquisition Corp. at ¶ 9 ; Debartolo , 8th Dist. Cuyahoga No. 96667, 2011-Ohio-6282, 2011 WL 6146073, at ¶ 10 ; Gibbs at 73, 573 N.E.2d 62, fn. 3. A trial court's decision whether to appoint a receiver will not be reversed absent a clear abuse of discretion. Sobin at ¶ 14. A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. Gibbs at 74, 573 N.E.2d 62.
{¶ 24} In this case, the trial court appointed a receiver pursuant to R.C. 2735.01(A)(7). The trial court found that appointment of a receiver was both "proper under the agreed and admitted facts and circumstances of this case as set forth in the pleadings" and "proper and necessary in order to protect, preserve and maximize the value" of the property at issue.
{¶ 25} The law firms argue that the trial court abused its discretion because (1) the trial court appointed the receiver, sua sponte, without conducting an evidentiary hearing and (2) adequate remedies at law exist to protect the law firms' interests. Specifically, the law firms argue that because they "may recover money damages for the Associations' breach of contract, fraud and breach of fiduciary duties-regardless of the disposition of the property"-the trial court lacked authority to appoint a receiver under R.C. 2735.01(A)(7).
{¶ 26} R.C. 2735.01 does not mandate an evidentiary hearing before appointment of a receiver. Leight v. Osteosymbionics, L.L.C. , 2017-Ohio-5749, --- N.E.3d ----, ¶ 35. Where a court is " 'sufficiently convinced,' " based on the parties' admissions and any other evidentiary materials or arguments presented by the parties that the property is in danger, a decision appointing a receiver without a hearing " 'is not error.' " Id., quoting Cawley JV, L.L.C. v. Wall St. Recycling L.L.C. , 2015-Ohio-1846, 35 N.E.3d 30 (8th Dist.). Where the circumstances warrant it, a trial court may appoint a receiver sua sponte. See Pal v. Strachan , 8th Dist. Cuyahoga No. 91808, 2009-Ohio-730, 2009 WL 405893, ¶ 2, 12, 14-18 (trial court did not abuse its discretion in appointing receiver sua sponte without a hearing where the receiver was not appointed "contemporaneously with the filing of the complaint," but rather, after the trial court "became thoroughly familiar with the issues" based on its review of the pleadings, its review of affidavits and other evidence submitted with pretrial motions, pretrial hearings and its awareness of the failure of a business mediation process); cf. Leight at ¶ 30-42 (appointment of receiver, ex parte, without a hearing, was not an abuse of discretion where trial court had held several pretrials, knew the parties, understood the claims and issues and had previously ruled on discovery motions).
{¶ 27} This is not a case in which the trial court appointed a receiver at the outset of the case, immediately following the filing of the complaint. Here, the trial court waited nearly ten months, after it had held conferences with the parties and was thoroughly familiar with the relevant facts and issues in the case, before appointing a receiver. During this time, the *1183 parties filed numerous detailed pleadings and motions, setting forth the relevant facts-many of which are undisputed. For example, the law firms' first amended complaint is 51 pages long and includes 165 numbered paragraphs and six exhibits in support of their five claims. The Association's first amended counterclaim is 31 pages long and includes 75 numbered paragraphs and two exhibits in support of its four causes of action. The attorneys' motion for partial summary judgment on the Association's counterclaims for breach of fiduciary duty and professional negligence is 450 pages long and includes an affidavit attaching 85 exhibits. As the trial court found, the facts and circumstances supporting its appointment of a receiver under R.C. 2735.01(A)(7) are established by the "admitted facts and circumstances of this case."[8]
{¶ 28} Pursuant to R.C. 2735.01(A)(7), a trial court has the authority to appoint a receiver in cases in which receivers have been appointed "by the usages of equity." The law firms have asserted a claim for an accounting of all the rent collected by the Association for the condominium units since the date they were transferred to the Association. " '[A] suit for an accounting is an equitable proceeding which supports the appointment of a receiver.' " Sobin , 2014-Ohio-4935, 21 N.E.3d 344, at ¶ 19, quoting In re Estate of Utterdyke , 11th Dist. Portage No. 92-P-0031, 1992 WL 366889, 2 (Dec. 11, 1992) ; see also Tonti v. Tonti , 118 N.E.2d 200 (2d Dist.1951), syllabus. The law firms also seek an award of $3,000,000 in attorney fees, which they claim represents 40% of the value of the 46 condominium units or, alternatively, ownership of 40% of the condominium units, seeking to exercise their equitable right to enforce a charging lien against the Association's recovery from the settlement of the K & D litigation.
{¶ 29} It is clear from the history of the parties' dispute-as set forth in the parties' admissions in the pleadings-that the parties cannot and will not agree on a manner or method of applying the contingency fee agreement to the noncash portion of the settlement. Although this issue could have been-and should have been-resolved at the time the parties settled the K & D litigation, for the past three years the parties have fought tooth and nail, each side claiming that the other is, by their actions, diminishing the value of the property at issue to the detriment of the other.
{¶ 30} The law firms have asserted a claim for breach of fiduciary duty based on the Association's alleged "deliberate efforts to artificially reduce the value" of the 46 condominium units while, at the same time, taking steps to preclude the Association from selling the property. The Association alleges, in turn, that the parties' ongoing dispute has "imped[ed] repairs from going forward to that building" and "interfer[ed] with the management of that building," harming the value of the units.
{¶ 31} "Equity" encompasses concepts such as "fairness; impartiality; evenhanded dealing" and "[t]he body of principles constituting what is fair and right." Black's Law Dictionary 656 (10th Ed.2014); see also TD Ltd. , 2014-Ohio-3996, 2014 WL 4534927, at ¶ 28. Although the law firms assert that appointment of a receiver is not necessary to protect their interests, they are not the only party whose interests warrant consideration. The trial court was *1184 also entitled to consider the interests of the law firms' former client, the Association, in determining whether the "usages of equity," including principles of fairness, impartiality and evenhanded dealing, warranted the appointment of a receiver.
{¶ 32} Further, the law firms' argument in challenging the appointment of the receiver contradicts the position previously taken by the law firms when arguing the standing issue. If it were true that the law firms had an "adequate remedy at law" based on their ability to recover money damages on their claims against the Association-"regardless of the disposition of the property"-it would seem that the law firms would not have been prejudiced by the appointment of a receiver and, as such, would not have had standing to appeal the appointment of the receiver in the first instance.
{¶ 33} Following a thorough review of the record and after carefully considering the arguments raised herein and the applicable law, we cannot say that the trial court acted unreasonably, arbitrarily or unconscionably in appointing a receiver under R.C. 2735.01(A)(7). The law firms' assignment of error is overruled.
{¶ 34} Judgment affirmed; case remanded for further proceedings.
TIM McCORMACK, J., and MARY J. BOYLE, J., CONCUR

Ownership of the adjacent parking lot was not immediately transferred to the Association as agreed under the settlement agreement but, rather, was the subject of continuing litigation.

On April 26, 2016, the Association filed its original answer and counterclaims against the law firms. On December 14, 2016, the Association filed an amended answer and counterclaims naming attorneys Kabat, Haber and DeSantis as additional counterclaim defendants.

Although the individual counterclaim defendants incorporated the first amended complaint by reference in their cross-claim and third-party complaint, the law firms had not yet been granted leave to file their first amended complaint.

Although the Association did not move for appointment of a receiver, it indicated at oral argument that it consented to the appointment of a receiver.

The receiver also filed a combined motion to dismiss the law firms' appeal for lack of standing and response brief and a reply in support of his motion to dismiss. We struck the receiver's filings because the receiver is not a party to this case and failed to comply with App.R. 17.

An order appointing a receiver is a final, appealable order capable of invoking this court's jurisdiction. See, e.g., Debartolo v. Dussault Moving, Inc. , 8th Dist. Cuyahoga No. 96667, 2011-Ohio-6282, 2011 WL 6146073, ¶ 8 (" 'It is well settled that an order appointing a receiver is a final, appealable order that affects a substantial right in a special proceeding.' "), quoting Hummer v. Hummer , 8th Dist. Cuyahoga No. 96132, 2011-Ohio-3767, 2011 WL 3275614, ¶ 8.

The doctrine of lis pendens is codified at R.C. 2703.26. R.C. 2703.26 provides: "When a complaint is filed, the action is pending so as to charge a third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title." The "general intent and effect" of lis pendens is "to charge third persons with notice of the pendency of an action, and to make any interest acquired by such third persons subject to the outcome and judgment or decree of the pending lawsuit." Bank of N.Y. v. Barclay , 10th Dist. Franklin No. 03AP-844, 2004-Ohio-1217, 2004 WL 503935, ¶ 10. "A person acquiring property subject to lis pendens takes the property subject to the final outcome of the action, and is as conclusively bound by the result of litigation as if the third party had been a party to the litigation from the outset." Id. ; see also Cook v. Mozer , 108 Ohio St. 30, 36-37, 140 N.E. 590 (1923).
" 'Lis pendens is not a substantive right * * * It does not create a lien, but charges the purchaser with notice of the pending action.' " Whitaker v. Paru Selvam, LLC , 2d Dist. Montgomery No. 26555, 2015-Ohio-3166, 2015 WL 4709076, ¶ 31, quoting Irwin Mtge. Corp. v. Dupee , 197 Ohio App.3d 117, 2012-Ohio-1594, 966 N.E.2d 315, ¶ 10 (12th Dist.) ; see also Solomon v. Harwood , 8th Dist. Cuyahoga No. 96256, 2011-Ohio-5268, 2011 WL 4842446, ¶ 39. Lis pendens "maintain[s] the status quo of rights and interests in property involved in litigation, not only as between the parties thereto but as to third parties having conflicting interests, until the action pending has been finally adjudicated." Cook at syllabus.

The law firms argue that the Association had not made any admissions because the Association has not yet filed an answer to its first amended complaint. However, the law firms ignore the other filings in the case, including the facts set forth in the Association's first amended counterclaims and the law firms' answer to the counterclaims.